## THE COLORADO CENTRAL R. R. CO. v. LEA ET AL.

Under the Constitution (Sec. 2, Art. 11), neither the State, nor any county, city, town, township or school district, can make any donation or grant to, or in aid of, or become a subscriber or shareholder in any corporation or company.

*Error to District Court of Arapahoe County.*

THE case is stated in the opinion.

Mr. A. H. DE FRANCE and W. A. HARDENBROOK, for plaintiffs in error.

Mr. L. C. ROCKWELL, Mr. B. L. CARR and Mr. PERCY AUSTIN, for defendants in error.

ELBERT, C. J.   June 12, 1872, the Board of County Commissioners of Boulder county subscribed $200,000 to the capital stock of the Colorado Central R. R. Co., and upon that day ordered and called an election of the legal voters of the county, to be held on the 17th of July of that year, for the approval of said subscription to the stock and the issue of the bonds of the county for that amount therefor.

At the election the legal voters of the county approved of such subscription, and upon the 13th of March, 1873, the Colorado Central R. R. Co., acting in pursuance to the contract and subscription aforesaid, issued and delivered to Boulder county 2,000 shares of stock in said company of $100 each.

On the 16th of April, 1873, the Board of Commissioners of Boulder county issued and delivered to the Colorado Central Railroad Company $100,000 in Boulder county bonds, and on the 19th of April they issued to said railroad company the other $100,000 of said bonds.

Boulder county received the shares of stock, and retained the same as its property until about the 12th of June, 1877, when, in pursuance of the following agreement, the stock was placed in the hands of C. G. Buckingham, to hold as trustee. The agreement is as follows:

" WHEREAS, The Colorado Central Railroad Company has made contracts for constructing an extension of its line of road from Longmont, by way of Fort Collins, to a connection with the Union Pacific Railroad at Cheyenne.   Now, therefore, it is

"*Resolved*, That the county of Boulder hereby agrees to do-

nate to the Colorado Central Railroad Company the 2,000 shares of stock in said Colorado Central Railroad Company now held by this county, upon the completion of said extension and making of said connection, and the running of freight and passenger trains thereon; *Provided*, said extension be made and said connection completed, and freight and passenger trains for the accommodation of the public be actually running thereon on or before the first day of December, A. D. 1877; and *provided*, also, that Boulder county shall have the right to vote said stock at all meetings of stockholders of said company until said donation is actually made, and that said Colorado Central Railroad Company take said stock and hold this county harmless from all litigation which may arise from said donation; and also *provided* that the time above specified shall be the essence of this agreement; and if said extension and connection is not made and completed, and trains running thereon as aforesaid, by said first day of December, 1877, then Boulder county will not donate its said stock as aforesaid.

" *Resolved*, That the certificate for said stock now held by Boulder county be placed in escrow with Charles G. Buckingham, Esq., of the county of Boulder, to be held by him until said first day of December, A. D. 1877, or until the completion of said extension of said railroad and said connection and the running of trains thereon as aforesaid, if made and done on or before the date aforesaid, and that said Charles G. Buckingham, Esq., be, and he hereby is instructed in case said extension and connection shall be completed and trains running thereon, as aforesaid, on or before the above mentioned date, immediately thereafter to deliver said certificate to the said Colorado Central Railroad Company; but if said extension and connection shall not be completed and trains running thereon, as aforesaid, on or before said first day of December, 1877, then on the morning of the second day of December, 1877, he shall return said certificate to the treasurer of Boulder county, and his duties in the matter shall terminate.

" *Resolved*, That a copy of these resolutions be delivered to

said Charles G. Buckingham, Esq., together with said certificate, for his instruction and guidance.

" *Resolved*, That the Chairman of the Board of County Commissioners be, and he hereby is authorized to assign said stocks and certificates to the said Colorado Central Railroad Company, in the name and in behalf of Boulder county, any time when or after the same may be properly delivered to said Colorado Central Railroad Company under and in pursuance of the foregoing resolutions.

" *Resolved*, That A. R. Stewart, Esq., County Treasurer, be, and he is hereby requested to deliver the certificate for 2,000 shares of stock in the Colorado Central Railroad Company, owned by Boulder county, now in his hands, to J. C. Hummel, Esq., to be by said Hummel placed in escrow, in accordance with resolutions this day passed, and said Hummel's receipt for said certificate shall be a sufficient voucher to the said treasurer therefor.

" *Resolved*, that J. C. Hummel, in placing said certificate in escrow with C. G. Buckingham, Esq., shall take said Buckingham's receipt therefor, and file said receipt with the county clerk."

The stock having been delivered to Buckingham in pursuance to the said agreement and resolutions of the Board of Commissioners, the defendants in error, on October 26, 1877, presented to the judge of the second judicial district, their bill of complaint asking for a temporary injunction, restraining said Buckingham from delivering the certificate of stock, and enjoining the company and all persons acting in its behalf from receiving the same. The judge made an order granting the injunction, agreeable to the prayer of the complaint.

To the answers filed by the plaintiffs in error, demurrers were interposed which were sustained by the court, and a decree rendered as prayed for in the bill of complaint.

The validity of the contract entered into by the Board of County Commissioners, and embodied in the resolutions above set forth, is the substantial question presented by the record.

Section 2, article 11, of the Constitution, provides that "neither the State, nor any county, city, town, township or school district shall make any donation or grant to, or in aid of, or become a subscriber or a shareholder in any corporation or company." * * *

The agreement, not only in its language but in substance, is a donation by the county of Boulder to, and in aid of, the Colorado Central Railroad Company, of the 2,000 shares of stock belonging to the county. Although conditional in the first instance, it became by its terms complete and absolute upon performance of the conditions.

That the construction of the proposed line of railroad would be of great benefit to the county and its citizens; that it would give them increased and superior facilities for traffic and commerce with both the Atlantic and Pacific seaboards, do not make it any the less a donation within the intent of the inhibition.

These and similar considerations of public benefit and advantage, had constituted for years, under our territorial government, the basis of appeals for and grants of county and municipal aid to railroad companies, and it was undoubtedly the intention of the framers of the Constitution, whether wisely or not, to prohibit, by the fundamental law of the new State, all public aid to railroad companies, whether by donation, grant or subscription, no matter what might be the public benefit and advantages flowing from the construction of such roads. I understand the framers of the Constitution and the people who adopted it, to have intended by this provision the declaration of a broad policy of prohibition, forbidding State, county and municipal aid to railroad and other companies in any of the modes specified.

If the existence of a public benefit is to give such an agreement the character of a sale of the stock, and take it out of the constitutional prohibition, then the prohibition is utterly nugatory and valueless, as such consideration would exist in every probable case. We consequently regard the agreement

as within the constitutional prohibition, and as without validity.

Again, the effect of the provisions of the act under which this stock was subscribed and bonds issued therefor, R. S. p. 134, Sec. 53, as well as the effect of the provisions of the later acts, Sess. Laws 1876, pp. 50, 51; Gen. Laws 114, Sec. 3, is to devote this stock to a specific use, namely, the liquidation of the bonds voted and issued therefor, and there was no power in the Board of County Commissioners to divert the stock from this statutory use.

The decree of the court below is affirmed with costs.

*Affirmed.*

Mr. Justice BECK did not sit in the case.