Harrington v. Atteberry, 21 N. M. 50.

[No. 1740, July 15, 1915.]
[Rehearing Denied January 12, 1916.]
HARRINGTON et al. v. ATTEBERRY et al.

### SYLLABUS BY THE COURT.

Chapter 51, Laws 1913, authorizing the board of county commissioners of the several counties of the state to appropriate annually, out of the funds of such county, the sum of $500 to a regularly organized fair association holding a county fair at the county seat, which money shall be used for the payment of premiums on agricultural, horticultural, arts, and live stock exhibits, being an appropriation for educational purposes, is in contravention of section 31 of article 4 of the state Constitution, which provides that "no appropriation shall be made for charitable, educational or other benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state.

Appeal from District Court, San Juan County; Abbott, Judge.

Action by W. H. Harrington and others against J. P. Atteberry and others, as members of and constituting the Board of County Commissioners in and for the County of San Juan. From a judgment for plaintiffs, defendants appeal. Affirmed.

E. P. DAVIES and ALEXANDER READ, District Attorney, of Santa Fe, and W. A. PALMER of Aztec, for appellants.

Appropriation of public funds can be appropriated for public purposes only, but such purposes include encouragement of patriotism, recognition of military or civil service, aid to destitute children and to fairs and expositions.

36 Cyc., page 894 et seq.; See Daggett v. Colgan, 92 Cal. 53, 28 Pac. 51, 14 L. R. A. 474; Kentucky Livestock Breeders' Assn. v. Hager, 120 Ky. 125, 85 S. W. 738; Norman v. Kentucky Board of Managers of World's Col. Exposition, 93 Ky. 537, 20 S. W. 901; Minn v. Janney,

86 Minn. 111, 90 N. W. 312; State of Nebraska ex rel. Douglas County v. John F. Cornell, 39 L. R. A. 513.

As to injuria sine damno, see 22 Cyc. 781.

A. M. EDWARDS of Santa Fe and WALTER M. DANBURG of Aztec, for appellees.

Only such assignments as were presented to trial court can be presented appellate court.
Duncan v. Holder, 15 N. M. 332.

Party cannot demur and answer to merits at same time.
Bank v. Western Union Tel. Co., 142 Pac. 160.

The appropriation does not distinctly specify the amount intended to be appropriated, hence is in violation of sec. 30, art. 4.

11 Cyc. 511; 2 Kent's Com. 306; County of Richmond v. County of Lawrence, 12 Ill. 1; Hockaday v. County Com., 1 Colo. App. 362.

The act conflicts with sec. 24, art. 4, State Const.

Lewis-Sutherland Stat. Const., sec. 196; Alexander v. City of Elizabeth, 28 Atl. —; State v. Garbroski, 82 Am. St. R. 524; Bowesheik v. Shaffer, 53 N. W. 304.

The act contravenes sec. 14, art. 9, which prohibits donations.

Garland v. Board of Revenue, 97 Ala. 223; Colo. Cent-R. R. Co. v. Lea, 5 Colo. 192; Taylor v. Ross County Commissioners, 23 Ohio St. 22; Wilkesbarre City Hospital v. County of Luzerne, 84 Pa. St. 55; Ellis v. N. R. R. Co., 77 Wis. 114, 45 N. W. 811; Johns v. Wadsworth, 141 Pac. 892.

The act contravenes sec. 18 of art. 4.
Cooley Const. Limitations, pp. 556 to 574.

Injunction is proper remedy to enjoin illegal act of Commissioners.
Catron v. County Commissioners, 5 N. M. 203.

## OPINION OF THE COURT.

ROBERTS, C. J.—This action was instituted in the court below by the appellees to enjoin the board of county commissioners of San Juan county from making an appropriation of certain of the funds of said county to the San Juan County Fair Association, a corporation organized under the general corporation laws of the state for the purpose of conducting a county fair at Aztec, the county seat of said county. The complainants also sought to restrain said respondents from taking any action looking to the remission of taxes levied against the property of said fair association. A temporary restraining order was issued by the court, which latter was made permanent, upon demurrer to the complaint being submitted and overruled, upon which respondents elected to stand.

The proposed appropriation of money, and remission of taxes, which it was sought to enjoin, was authorized by chapter 51, Laws 1913, which, in so far as material, reads as follows:

"Section 1. The board of county commissioners of each county shall appropriate annually a sum of not less than five hundred ($500) dollars from the general fund of their respective counties, to a regularly organized and incorporated county fair, the said appropriation to be applied towards paying premiums in the agricultural, horticultural, arts and livestock exhibit premiums."

"Sec. 3. That the said appropriations shall be paid over annually to the secretary of the said association on or before the 15th day of July in each year, said secretary shall immediately turn the amount received from the county commissioners over to the treasurer of the said association, who shall give good and sufficient bonds to cover all moneys in trusted to his care, belonging to said association."

"Sec. 5. That all property of said association which is used for the purposes above described shall be exempt from taxation so long as it is used for the purposes set forth herein."

The controlling constitutional provision invoked, and which is decisive of the right of the board to make the appropriation of the money of the county to the fair association, for the specified purpose, is section 14 of article 9, which reads as follows:

Harrington v. Atteberry, 21 N. M. 50.

"Neither the state, nor any county, school district, or municipality, except as otherwise provided in this Constitution, shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation, or in aid of any private enterprise for the construction of any railroad; provided, nothing herein shall be construed to prohibit the state or any county or municipality from making provision for the care and maintenance of sick and indigent persons."

It is conceded that the fair association in question was a corporation, organized under the general corporation laws of the state, having a capital stock, divided into shares owned by private individuals; that it was organized for the purpose of holding a county fair at Aztec, said county, and to offer and award premiums for superiority and excellence in horticultural and agricultural exhibits, and for other purposes. Whatever profits it might make could, of course, be distributed to its several stockholders as dividends, or expended for corporate purposes. Over its property, profits, and income, neither the state nor the county had any votes or control. One of its corporate purposes, as stated, was to offer premiums for agricultural and horticultural exhibits. In order to pay such awards, in the absence of assistance from the county, the association would necessarily be required to expend its own funds. By the act in question the board of county commissioners is authorized to pay to such association annually the sum of not less than $500 to be used for the purpose of discharging an obligation assumed by and resting upon the corporation, viz., the payment of premiums which it offers for agricultural and horticultural exhibits.

It is argued by appellants that the county commissioners have a right to expend public funds for the general welfare of the county; that the prosperity of the state depends, to a large degree, upon the success of its horticultural and agricultural industries; that the encouragement of these pursuits, and the education of those engaged and desiring to engage in such vocations, is a public duty, for which public funds may be lawfully expended, if legislative authority therefor exists, without violating any

constitutional provision. All this may be admitted to be true, and still it does not alter or affect the present question. Here the Legislature has not authorized the boards of county commissioners to expend public funds for such purpose, but has directed the paying over of such funds to a corporation, not under the control of the county or state, to be used by such corporation. in discharging an obligation assumed by it, thereby relieving it of the expenditure of its own funds, to the extent of the aid advanced by the county. It is true the holding of a county fair, at which the agricultural, horticultural, and other resources and products of the county are exhibited and premiums awarded for the superior product, is educational in its nature and serves a public purpose; but, if this were the criterion by which the validity of an appropriation of public funds is to be measured, there would be hardly any limit upon the right of the state, county, city, or school districts to appropriate money to a private corporation. Within the state we have many private corporations engaged in educational work and a still greater number serve some other useful public purpose. Private individuals are likewise engaged in pursuits of a similar nature. If all these individuals and corporations could be given public money to aid them in carrying on the work in which they are engaged, there would practically be no limit upon the various agencies of government in the expenditure or donation of public funds, and the constitutional provision in question would be a vain, useless, absurd, and meaningless aggregation of words and sentences.

The language of the constitutional provision is so clear and explicit that it does not require construction; all that need be done is to read it and apply the language in its ordinary sense. It prohibits the state, county, and other agencies of the state named, from making any donation to or in aid of any person, association, or public or private corporation, except as otherwise provided in the Constitution. Therefore an act of the Legislature appropriating money, or directing a county to appropriate money to

a private corporation engaged in conducting a county fair, for the purpose of paying premiums on agricultural and horticultural and other exhibits, which is a duty assumed by such corporation, is in conflict with section 14 of article 9 of the state Constitution, prohibiting donations to persons, associations, and public and private corporations.

Very little authority, directly in point, is available. The appellees cite the following cases, which they claim evidence the invalidity of the statute: Garland v. Board of Revenue, 87 Ala. 223, 6 South. 402; Colo. Cent. R. Co. v. Lea et al., 5 Colo. 192; Taylor v. Ross County Comr's, 23 Ohio St. 22; Wilkesbarre City Hospital v. County of Luzerne, 84 Pa. 55; Ellis v. N. P. R. R. Co., 77 Wis. 114, 45 N. W. 811; Johns v. Wadsworth, 80 Wash. 352, 141 Pac. 892.

In Colorado Central R. Co. v. Lea et al., supra, the board of county commissioners of Boulder county subscribed for certain stock of the railroad company and called an election for the approval of the subscription. The voters approved the subscription and the stock was delivered to the county. Subsequently the county delivered to the railroad bonds of the county of the face value of its stock subscription, and the stock received by the county was subsequently placed in the hand of an individual, by the county, as trustee, and agreed to donate to the railroad company the stock upon the completion of a certain railroad. The stock was placed in escrow for that purpose. The action was to restrain the trustee from delivering the stock and the railroad company from receiving it. Section 2 of article 11 of the Constitution of Colorado then provided:

"Neither the state, nor any county, city, town, township or school district shall make any donation or grant to, or in aid of, or become a subscriber * * * or shareholder in any corporation or company." ·

And the court held that the agreement contained a "donation" and was unconstitutional, notwithstanding the fact that it might be very advantageous to the county to obtain the increased and superior facilities for traffic and commerce.

"If the existence of a public benefit is to give such an agreement the character of a sale of the stock, and take it out of the constitutional prohibition, then the prohibition is utterly nugatory and valuless, as such consideration would exist in every probable case." Colo. C. R. R. v. Lea et al., 5 Colo. 192.

The county, in theory at least, received something in return for the stock, even though that something perchance was intangible, and nevertheless the court places upon such transaction its stamp of disapproval. The railroad company in the cited case would have received no more primary benefit by the stock delivery than does the corporation in the case at bar. It received all the benefit of the stock delivery, while the corporation, whose chief business it is to conduct county fairs, or fairs of some character, likewise received, or would receive, all the benefit of the appropriations. The fact that individuals eventually obtained the appropriation makes no difference as we see it. In point of fact the cited case is not clearly analogous with the facts in the case at bar. But the length to which the court went is very apparent.

In Taylor v. Commissioners, supra, the plaintiffs enjoined the county, through its commissioners, from making or delivering a certain amount of coupons and from making any contracts for the construction of railroads, on the ground, among others, that the county contemplated building a railroad, under an act of the Legislature, and eventually donating it to certain organized railroad corporations. The act permitted the county to lease the constructed railroad or to sell it for such compensation and upon such terms as may be agreed upon, ratified by the voters. The court held that the act authorized public money or credit to be furnished for or in aid of private parties, and that taxes could be laid only for public purposes and expended for that purpose, and that the purpose was not public.

In Wilkesbarre City Hospital v. County of Luzerne, supra, the hospital was a charitable institution created for the purpose of receiving and treating sick and injured citizens. It relieved the county and adjoining poor dis-

tricts of great liability, and was not controlled by any religious sect.   In 1874, the Legislature authorized county support, upon requisition, not to exceed a certain sum per annum, to any one hospital.   A requisition for money by the hospital for the support of poor patients was refused. The Constitution provided that:

"The General Assembly shall not authorize any county * * * to become a stockholder * * * or to obtain or appropriate money for * * * any corporation, association, institution, or individual."   Const. Pa., art. 9, § 7.

The trial court said:

"The county is by this act authorized and directed to appropriate money for a corporation, but the Constitution says the Legislature shall not authorize such appropriation.   The object of the constitutional provision is to prevent the money of the taxpayer from being given to a corporation or institution. * * * The conflict between the act and the Constitution is clear and obvious; it is so plain and palpable as to leave no doubt or hesitation in our minds."

Chief Justice Agnew, in delivering the opinion of the court, among other things said that the court had held in a former case that obtaining money for or loaning its credit to a corporation, a provision under a former Constitution, did not violate the Constitution if the purpose was public.   The court, referring to that case, wherein payment was authorized to relieve the people of a municipality of an impending draft into military service, said that the purpose of the payment was to discharge an obligation or duty resting upon the municipality:

"A law enabling a private incorporated hospital to make requisitions upon a county, for the payment of its charges for the support of patients under treatment, even though they be paupers, is an appropriation of money by the county to the corporation and comes within the prohibition of the Constitution.   It is not a payment of any debt incurred by the county, but is a transfer of the money by operation of the act of assembly from the treasury of the county to that of the hospital.   The hospital exercises no municipal function, but takes as a private institution by a mere act of appropriation."

It was also stated that the county had no control over the corporation, could not make visitation of it, and when the money was once paid over it was beyond the control of the county, and that:

"The constitutional restriction is wise in its purpose and ought to be liberally construed for the protection of the people, and strongly against the inhibited institutions and parties."

The nursing of the sick poor is as much a public purpose as an exhibition of the products of a county, but we do not see how the purpose can so completely override the constitutional prohibition.

In Johns v. Wadsworth, County Auditor, supra, decided in 1914, a taxpayer enjoined the issuance and payment of a county warrant. The commissioners allowed a claim to the Western Washington Fair Association, a private corporation organized for the purpose of holding a county fair and giving an exhibition of stock, agricultural and dairy products, as well as articles manufactured in a certain county. An act of the Legislature authorized any corporation organized for fair purposes, for exhibition of certain things, to apply to the county commissioners for money to pay "expenses and premiums awarded." The members of the county board of commissioners were ex-officio members of the fair association or corporation. The building erected and constructed with the funds appropriated became the property of the county. A section of the Constitution prohibited counties becoming indebted for any other than strictly county purposes. The constitutional provision, under which the plaintiff claimed the act of the Legislature to be invalid, read:

"No county, city, town, or other municipal corporation shall thereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company, or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation." Const. Wash., art. 8, § 7.

The appellants contended that the chief purpose of the act was to promote a public purpose. The court said:

Harrington v. Atteberry, 21 N. M. 50.

"The section of the Constitution last quoted in most express terms prohibits the county from giving any money, property, or credit, to, or in aid of, any corporation, except for the necessary support of the poor and infirm. If the framers of the Constitution had intended only to prohibit counties from giving money or loaning credit for other than corporate or public purposes, they would doubtless have said so in direct words. That agricultural fairs serve a good purpose is not questioned, but the Constitution makes no distinction between purposes, but directly and unequivocally prohibits all gifts of money, property, or credit to, or in aid of, any corporation, subject to the exception noted."

The court then approves the case of Wilkesbarre City Hospital v. County of Luzarne, supra, and said:

"Here the appropriation is to a private corporation organized for a worthy purpose, educational in its nature. There is no room. however for construction. Unless plain, simple, direct words have lost their meaning, the Legislature was without power to authorize the gift. The act authorizes a 'grant' to pay 'expenses and premiums.' The amendment of 1909. which provides that the members of the board of county commissioners shall be ex-officio members of the association, adds nothing to the validity of the act. The same may be said of the amendment which provides that the buildings erected with the money appropriated shall become the property of the county making the appropriation. How money given to pay 'expenses and premiums' shall be transmuted into buildings we are not advised. Counsel for the respondent very pertinently observes: 'Whitworth College is almost on the point of being removed from Tacoma to Spokane, because it needs money. The college is a great public benefit to Tacoma, probably as much as the fair is to the county. What is to hinder the Legislature from authorizing the city to supply the lacking funds, giving them subject to the condition that the mayor shall be ex-officio a member of the college board of trustees, and that the college treasurer shall report annually how the money was spent? Many people think that one of the greatest institutions a city can have is a theater and auditorium; why not contribute $10,000 or $50,000 to the construction of one, put a councilman or two on the board, and have a yearly account filed?' Such illustrations might be multiplied, and who shall say that such associations are not worthy, or that they would not conduce to the public good?"

The court then cites many of the cases cited by appellant in the case at bar, including Daggett v. Colgan, 92 Cal. 53, 28 Pac. 51, 14 L. R. A. 474, 27 Am. St. Rep. 95, and distinguished that case from the case at bar by saying:

"In Daggett v. Colgan, it was held that an act which appropriated money to be used in the construction of buildings and maintaining an exhibit of the products of the state at the World's Fair to be held at Chicago was not in conflict with the Constitution of the state. In principle it does not differ from the rule announced in Rands v. Clarke County [79 Wash. 152, 139 Pac. 1090.]"

Appellants rely upon the following cases, which they claim support their position: Daggett v. Colgan, 92 Cal. 53, 28 Pac. 51, 14 L. R. A. 474, 27 Am. St. Rep. 95; State ex rel., etc., v. Cornell, 53 Neb. 556, 74 N. W. 59, 39 L. R. A. 513, 68 Am. St. Rep. 629; Kentucky Live Stock Breeders' Ass'n v. Hager, 120 Ky. 125, 85 S. W. 738, 9 Ann. Cas. 50; Norman v. Kentucky Board of Managers World's Columbian Exposition, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556; Minneapolis v. Janney, 86 Minn. 111, 90 N. W. 312.

In Daggett v. Colgan, supra, mandamus was brought to compel the State Comptroller to draw his warrant in favor of a claim contracted by a member of the World's Fair Commission in pursuance of the authority of a statute of 1891. The act authorized and directed the Governor of the state to appoint the members of the commission and invested the Governor with exclusive power and control of the moneys appropriated to the purpose and its expenditures. $300,000 was appropriated by the state. It was contended that the act conflicted with that provision of the Constitution which provided that:

"No money shall ever be appropriated or drawn from the state treasury for the use or benefit of any corporation * * * not under the exclusive control and management of the state." Const. Cal., art. 4, § 22.

The court, among other things, said:

"On the contrary, it appears from the act itself that the appropriation is to be expended by the state itself, disbursed by its own agents or officers, and is to be used only for the purpose of 'erecting buildings and collecting and maintaining an exhibit of the products of the state of California."

The act involved in the case at bar makes no provision for the expenditure of the appropriations to the San Juan

County Fair Association, or any other fair association, by the state itself, unless the court determines that the treasurer of the corporation or association is an officer of the state. True, the appropriation is dedicated to the payment of a specific purpose. The court, in the last-cited case, further said:

"  *   *   *   There is nothing on the face of the statute to indicate that the private corporation referred to, or any individual, will or can, if the appropriation is honestly expended, receive one dollar as a gratuity."

This case is not at all in point. First, there the corporation was created for the state. The commission was a subordinate governmental department of the state. The executive department of the state appointed members of the commission, and the money was expended by the executive himself. Also, the provision of the Constitution is not in identical terms with the provision of the Constitution involved in this case. This, it is true, may be of no great importance. The clear mark of distinction between the cited case and the case at bar is that in one, the cited case, the state initiated the scheme of the exhibit and shouldered all the responsibility in reference thereto. It was operated and managed by officers appointed by the state, and the Governor, as a direct representative of the state, disbursed and expended the money appropriated to the commission. The creation of a state board of equalization in this state, with the Governor a member ex-officio, would be more nearly analogous in point of fact with the cited case than are the facts in the case at bar. An appropriation to such a board, incorporated by act of the Legislature, of course, would not conflict with the provision of the Constitution cited by appellee. We do not regard the cited case as being at all in point. It is simply authority for the fact that an appropriation to a governmental agency is not prohibited by the Constitution, and the main fact which underlies that holding is that in that event there is no "gift" or "donation," which, of course, must be true.

In State, etc., v. Cornell, supra, mandamus was brought to compel the auditor of public accounts to register coupons voted to raise money to enable the state to participate in a certain national exposition. The court held that the Legislature could validly authorize the raising of public money for public purposes, and held that the purpose for which the money was raised was a public purpose. No particular constitutional provision such as confronts · us in the case at bar was involved. The general doctrine of the case is that the right to expend money is co-extensive with the right to tax. In other words, taxation can be only for a public purpose, and, when otherwise unrestricted, the Legislature may expend money for a public purpose. What is a public purpose, in the first instance, lies in the discretion of the Legislature, ·which the courts will not substitute for their own discretion except in those cases where it is palpably shown that the purpose is private rather than public.

In Kentucky Live Stock Breeders' Ass'n v. Hager, an act of the Legislature appropriated money for the State Fair, to be used in the payment of premiums. The State Fair, "in order to relieve the said State Fair of any political appearance," was placed under the management and control of the association. The court held that the act of the Legislature directed a State Fair to be held, and that the association was simply the agency of the state selected by the Legislature to carry out the purpose of the state. It further held that the state might properly appropriate money to a public purpose and might well make an existing corporation its agent for the disbursement of the appropriation, "just as it appoints other agencies for this purpose."

The last cited case and the case at bar are quite different. There the state shouldered the responsibility of carrying on a state fair, while in the case at bar the Legislature simply recognized that county fairs were being conducted by private corporations, voluntarily organized by individuals who owed no duty to the state nor any of

its subdivisions. The state might well create a commis-
sion to hold a fair and appropriate money for that pur-
pose, for the state itself then would be holding the fair,
shouldering the responsibility, even though it acted
through agencies over which it had complete control and
supervision. But the San Juan County Fair Association
owes no duty to the state. It is controlled by individuals
associating themselves voluntarily together for a given pur-
pose. The fact that that purpose might be public or semi-
public cannot change the characteristics of the appropri-
ation, nor does it place the corporation under the exclu-
sive control of the state. Can the state, in the case at
bar, effectively direct the corporation to do anything which
does not directly concern the appropriation of the money?
Can the state supervise or control the actions of the cor-
poration in any regard? We fail to see how it can. The
corporation, in its management and control of the county
fair, is as omnipotent as any corporation organized by law
and carrying on a private business. How can there be
the relation of principal and agent when the principal has
no power over the agent and cannot direct it to do this,
that, or the other thing?

In Norman v. Board of Managers, etc., supra, another
Kentucky case, the state appropriated money for exhibit-
ing the resources of the state. It was held that the ap-
propriation was for a public purpose and the appropria-
tion was sustained.

As a question of policy, it might well be said that,
should we follow the inapropos decision of the Kentucky
court, there might be no end of confusion. Under those
decisions, the Legislature might appropriate money to a
railroad corporation to be expended in advertising the re-
sources of the state, which the Legislature might declare
to be a public purpose. Such legislation could not be sus-
tained on the theory that the state constituted the rail-
road corporation an agency of the state for a specific pur-
pose. To be within the terms of the constitutional pro-
vision, the state must have complete control over the cor-

poration, so that the corporation is then but a subordinate governmental agency.

In Minneapolis v. Janney, supra, an act of the Legislature authorized a city council to execute deeds, with conditions, to the Industrial Exposition, a corporation. The corporation was a private one, which operated without pecuniary profit to its members. Subsequently, the Legislature authorized the city council to release the corporation of the performance of the conditions contained in the deed to it and to quitclaim to the corporation the right, title, and interest of the city in and to certain lands. The court held that the company, though in form a private corporation, was organized partly, if not wholly, for a public purpose, and that indirect taxation, resulting from a donation to the company of property belonging to the city, was for a public and not private purpose, and was therefore not obnoxious to the general rule that taxation cannot be made for private purposes. No particular constitutional provision, unless it be that which declares that taxes should be levied for public purposes only, was involved.

Clearly this court would immediately disapprove a gift to any corporation, whether it exercised a party public function or not, should the occasion arise. We cannot understand why the court characterizes the release as a "donation" to the corporation and at the same time sustains the legality of such action. So far as the case at bar is concerned, the cited case is no authority; for, if in reality the release was a "donation," it would be condemned by the literal meaning of the constitutional provision involved in the case at bar, but not involved in the cited case.

The confusion of the appellants, in the case at bar, results from their failure to properly distinguish the difference in meaning between a "public governmental function" and a "public purpose." The exercise of public governmental function must always be presumed to be the exercise of a public purpose, whereas something may be done for a public purpose, or quasi public purpose, like

caring for the poor and destitute, educating the youth of the country, etc., and still not be in pursuance of the exercise of a governmental public function. It would depend upon the power and identity of the person or corporation acting.

Citizens of the county of Santa Fé or a private corporation might well cause a public bridge to be constructed in the county, which would serve a public purpose or benefit; but they would not be exercising any public governmental function, because they are not the instrumentalities or agencies of the government endowed with the power of their principal. And that is the distinction between the cited cases of appellants and the case at bar. Admit that the fair association of the county of San Juan exercises powers for the benefit of the general public, for a purpose entirely public in its nature, without contemplation of one cent of pecuniary profit to themselves or to the corporation, and still it is not established that, because of the exercise of powers for a purpose purely public in its nature, the County Fair Association is a part of the government of the state. The act did not create them such and their functions are not governmental.

The concurring opinion of one of the justices of the Supreme Court of Washington in the Johns v. Wadsworth Case, supra,, is interesting and instructive.

"It is with extreme reluctance that I have given my assent to the foregoing opinion. The grant in question is of obvious public benefit. The terms of the quoted provision of the Constitution are, however, so clear and explicit as to leave no room for construction. We can do no more than acquiesce in what the Constitution has already plainly declared. To do otherwise would be an act of judicial lawlessness. I am therefore constrained to concur."

This case cannot be distinguished from the case at bar on account of the appropriation of money for "expenses." The court apparently gave as much weight to the fact that the act provided the county fair with money for "premiums" as for "expenses." If the Legislature was without power to provide the County Fair Association with money for "expenses" incurred or to be incurred in the

exercise of a public benefit or purpose, we can see no reason why it can legally provide the association with money for the payment of "premiums." The association, as such, obtains no greater advantage because of money provided for the payment of expenses incurring by it in exercising its functions than it does in being relieved of the obligation of the payment of premiums. The case, in our judgment, is on all fours with the case at bar.

In the case of State v. City of St. Louis, 216 Mo. 47, 115 S. W. 534, the St. Louis School and Museum of Fine Arts was an association voluntarily supported by contributions and endowments. The school was largely conducted as a public and free institution for educational purposes. It built a large building in St. Louis, on ground given it by the city, and the city became the owner thereof. In 1907, the Legislature passed an act providing that cities over a certain population upon certain conditions must levy a certain tax for the support and maintenance of a museum, the proceeds to go to the "Art Museum Fund." The school herein referred to qualified as the Museum of the City of St. Louis, and claimed the right to certain proceeds of said special levy, which were denied to it by respondent. The respondent denied the right of the school to the money, on the ground, among others, that the payment of said money or any part thereof to it would constitute a donation and be in conflict with sections 46 and 47 of article 4 of the state Constitution, which provided:

"The General Assembly shall have no power to make any grant, or to authorize the making of any grant, of public money or thing of value to any individual, association * * * whatsoever, provided this act shall not be construed so as to prevent the grant of aid in case of public calamity."

"The General Assembly shall have no power to authorize any county * * * to lend its credit or to grant public money * * * in aid of or to any individual, association or corporation whatsoever," providing that the Legislature should not be prohibited from providing for pensions for crippled and disabled firemen and relieving their widows and minor children.

The court held that the administrative board of the relator was not under the control of any administrative board specified in the law, and that the relator was a private corporation, and that it did not become a department of the city because of the public functions which it sought to exercise.

"In view of these constitutional provisions, the argument of the counsel for the relator that this tax can be upheld and this art museum fund turned over to the Board of Control, * * * because said tax is for a public purpose, is 'in our opinion wholly untenable."

So far as the constitutional question is concerned, the cited case and the case at bar are very similar. Had the appropriation in the last-cited case been to a governmental agency of the city, it would have been unobjectionable; but, while the purposes which the relator was carrying out were of a public nature, culture and education, the association was nevertheless a private corporation and would have received a "donation" within the meaning of the constitutional provisions, supra.

In the case of McClure v. Nye, 22 Cal. App. 248, 133 Pac. 1145 (June, 1913), an appropriation of $15,000, "for the purpose of paying the transportation of certain veterans of the Civil War to Gettysburg * * * on the occasion of the fiftieth anniversary of the gigantic contest of that memorable battlefield," was contested on the ground of its alleged unconstitutionality. The court said:

"It may be said, also, that the appropriation for the transportation of veterans to Gettysburg and return is clearly in contravention of section 31 of article 4 of the Constitution, providing that 'the Legislature shall have no power * * * to make any gift, * * * of any public money or thing of value, to any individual, municipal or other corporation whatever.' No refinement can make it appear otherwise than as a gift, and therefore under the ban of the Constitution."

In Ex parte Smith, 56 Tex. Cr. R. 375, 120 S. W. 200, 23 L. R. A. (N. S.) 854, 133 Am. St. Rep. 976 (1909), the court held that an act providing that the fine imposed upon a husband for abandoning his wife and children shall be paid into court for the benefit of the wife or child-

ren is in conflict with a section of the Constitution providing that "no appropriation for private or individual purposes shall be made." The proposition was based primarily upon the fact that the money received as fines belonged to the public and as such could not be appropriated for private uses. Again, this case is not in point with the facts of the case at bar, but indicates the general theory pursued by courts when this constitutional provision which seems to prevail in many of the states, is under consideration.

In the case of William Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568 (1898), the Legislature had provided by its act for appropriations for seed grain loans to farmers. The theory of the act was to provide the farmers, who did not own 160 acres of land, with sufficient money to purchase seed for grain. The money loaned was to be recovered by the state by a levy in three installments, which constituted a lien on the land. The constitutional provision applicable provided that:

"The credit of the state shall never be given or loaned in aid of any individual * * * or corporation." Minn. Const., art. 9, § 10.

And the court said:

"If the state cannot loan its credit, it cannot borrow the money on its own bonds, and then loan the money."

The effect of that holding was to prohibit appropriating money to private purposes. We admit that this case is but very little in point, but demonstrates the limits to which the court goes in preventing public money to become the property of individuals.

In Washingtonia Home of Chicago v. Chicago, 157 Ill. 414, 41 N. E. 893, 29 L. R. A. 798 (1895), the question, among others, decided by the court, was as to the constitutionality of an act passed by the Legislature specially creating the relator as a corporation, the object of which was the founding and maintenance of an institution for the care, cure and reclamation of inebriates. The act provided that, with the consent of the officers of the relator

corporation, any person sentenced by the authorities of
the city of Chicago to Bridewell, or the house of correc-
tion for intemperance, may be received and detained at
the relator's institution in lieu of Bridewell or house of
correction.  Ten per cent. of all moneys received from
liquor licenses was made to constitute a fund for the re-
lator corporation.  The city claimed that the act violated
a provision of the Constitution providing:

"No county, city, town, township or other municipality,
shall * * * make donation to, or loan its credit in aid of
[any railroad or private] corporation." Const. Ill., art. 14.

The court said that the first question to be determined
was whether the relator was a private corporation.  After
considering certain things, the court said:

"At all events, no state control over the institution is pro-
vided for, nor has Chicago or Cook county any voice in its
control or management.  The corporation has the right to
acquire and hold property, * * * but the state has no
voice in the management or control of the property thus ac-
quired, or in the mode or manner in which the institution
shall be managed or conducted. * * * But the entire su-
pervision and control seem, under the charter, to be intrusted
to private individuals.  No officer or manager of the corpora-
tion is elected by the people or appointed by the state.  The
institution owes no duty to the public or the state."

The court then cites authorities as to what constitutes a
private and what a public corporation, and concludes that
the relator is a private corporation within the meaning
of the law.  The court then held that the appropriation
to the relator was a gift, and that the provisions of the
Constitution, supra, was self-executing and that there-
fore the relator could not maintain his suit.

In Fox v. Mohawk, etc., Humane Society, 165 N. Y.
517, 59 N. E. 353, 51 L. R. A. 681, 80 Am. St. Rep. 767,
the action was to restrain the defendants from killing,
etc., plaintiff's dog.  The defendant was a voluntary asso-
ciation organized for the purpose of preventing cruelty
to children and animals, and possessed corporate powers.
An act of the Legislature provided that everyowner of a
dog must pay a license fee of one dollar per annum to the
society.  The court said:

"The appropriation of public money for other than strictly governmental purposes, and its expenditure through other than official channels, have been most carefully limited by article 8 of the Constitution. By section 9 it is prescribed: 'Neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation, or private undertaking. This section shall not, however, prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper.' By section 10: 'No county, city, town, or village shall hereafter give any money, or property, or loan its money or credit to or in aid of any individual, association, or corporation. * * * This seciton shall not prevent such county, city, town, or village from making such provision for the aid or support of its poor as may be authorized by law.' * * * By this comprehensive enumeration of money of the state, of a county, city, town, and village, it is plain that the Constitution meant to include all public moneys which are raised in any manner throughout the state as an exaction from the citizen by the taxing or licensing power of government. * * * If the appropriation to the defendant of license fees prescribed by this statute is a gift of money to or in aid of an association, corporation, or private undertaking, then it is in conflict with the constitutional provision cited. It is not necessary to determine whether these license fees are to be regarded as the money of the city or the money of the state. * * * It is contended, however, that the defendant, though a corporation organized by the voluntary acts of individuals, is a 'subordinate governmental agency,' and that an appropriation * * * to its use is but an appropriation of money for the support of the government and not within the constitutional restrictions. If it were necessary for the disposition of this case, agreeing with the view of the learned Appellate Division, I certainly should deny the right of the Legislature to vest in private associations or corporations authority and power affecting the life, liberty, and property of its citizens, except that of eminent domain, to be exercised for a public purpose. * * * Of course, the state or any of its subdivisions may employ individuals or corporations to do work or render service for it; but the distinction between a public officer and a public employe or contractor is plain and well recognized. (Citing authorities.) I do not base my judgment exclusively on the view that a corporation cannot take an oath of office, for the acts of the corporation must be done by agents who are natural persons. In many cases the Legislature has created corporations from boards of public officers. My chief objection is that the corporations are private in the sense that they proceed from the voluntary actions of individual citizens alone. * * * That the agents or officers of the corporation are appointed such by the corporators, and that if such agents are invested by virtue of their agency alone with the power of public officers, it is in

substance devolving the choice of public officers on a few of the citizens, and possibly persons not citizens, while under the Constitution all public officers must be elected or appointed by other public authorities, and thus trace their title to power and authority either immediately or mediately back to the people."

The court then analyzes the duties of the defendant and holds that it is not a governmental agency, and that the appropriation to it of the license fee is in conflict with the provisions of the Constitution cited supra.

The fact that the corporation exercised power over the subject which might well have required the attention of the city did not have the effect of designating the defendant as a subordinate governmental agency. If it had been such an agency, of course the appropriation would not have been a gift, and therefore not within the constitutional inhibition.

In the case of State v. Nelson, 1 N. D. 88, 45 N. W. 33, 8 L. R. A. 283, 26 A. St. Rep. 609 (1890), the court declared that a statute authorizing counties to issue bonds and buy grain with the proceeds for needy farmers residing therein was not invalid as in conflict with the Constitution. The court held, in effect, that section 185 of the Constitution prevented the loan of aid to individuals or corporations, but specifically granted permission to lend aid for the poor, and construed the act in question as one promulgated for the aid of the poor. The holding is not in point with the facts in the case at bar, because it fell within an exception of the constitutional provision with which we have nothing to do in this case.

In Elting v. Hickman, 172 Mo. 237, 72 S. W. 700 (1903), the court held that an appropriation to a special road district, which was created by a city under the provisions of a general law permitting the creation of special road districts not more than six miles square, was not unconstitutional as granting money to a corporation, association or individual. The holding is clearly correct, for the road district was a subordinate governmental agency, and therefore did not come within the meaning of the constitutional prohibition.

The court, in People v. San Joaquin, etc., Ass'n, 151 Cal. 797, 91 Pac. 740 (1907), held that an appropriation to the association was not in conflict with a provision of the Constitution prohibiting appropriations for the use or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution. The court reviewed the existence of the association, the fact that it was incorporated to carry on a public function of the state. The entire state was divided into agricultural districts, and 50 or more persons, representing a majority of the counties within a district, were authorized to form an association for the purposes of the act. The association was managed by a board of directors, who were appointed by the Governor and held office for four years. There were 45 districts within the state. The statute declared that each and every association so formed was a state institution and that the board so appointed and qualified shall have the exclusive control and management of the institution for and in the name of the state. It is very clear that under these circumstances an appropriation to the institution was not a gift or donation to a private association or corporation. In the case at bar the board of directors of the fair association are not appointed by the state, nor do they hold office by virtue of any appointment made by any state officer. They act independently of the state in all matters, and the only duty they owe the state is to expend money appropriated to them in pursuance of the purposes of the act of the Legislature.

The case of Board of Directors v. Nye, 8 Cal. App. 527, 97 Pac. 208 (1908), followed the reasoning of the last-cited case and held that the Woman's Relief Corps Home Association was made a state institution by legislation and that an appropriation thereto was not in conflict with the constitutional provision.

In State ex rel. Town of Kirkwood v. County Court, etc., 142 Mo. 575, 44 S. W. 734, (1898), the court held that a statute granting cities, towns, and villages a certain per cent. of collected taxes, for road purposes within

those cities, towns, and villages, was in conflict with a provision of the Constitution prohibiting the General Assembly from making or authorizing the grant of public money or thing of value to an individual, association of individuals, municipal or other corporations whatever.

In Woodall v. Darst, 71 W. Va. 350, 77 S. W. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B, 1278, (1912), the court held that an appropriation to a member of the National Guard for injuries sustained by him when in actual service was constitutional. The gist of the holding is that the appropriation was for a public purpose. The court said that the power to appropriate public money was coextensive with its power to tax. No particular constitutional provision was in dispute.

In Kavanaugh v. Gordon, 244 Mo. 695, 149 S. W. 587 (1912), the court declared unconstitutional a statute appropriating $7,000 for the salary and expenses of an expert to the Missouri Waterways Association. The essential provision involved prohibited the grant of public moneys or anything of value to an individual. The court first held that the person to whom the money was appropriated was not a public officer, because his duties were not defined; that "the source of official life is not hinted at, let alone set down."

"Hence the provision that $7,000 of the $17,000 appropriated to the commission must be paid to him on his own vouchers amounted in reason and law to an out-and-out gift to him, as an individual, of $7,000 of the state's money, in violation of * * * the Constitution, supra."

All the justices did not concur in the reasoning of the foregoing opinion, but held that the action of the trial court in sustaining the demurrer in the court below was proper.

In Wessling v. Nye, State Comptroller, 165 Cal. 472, 105 Pac. 408 (1909), the court held that a statute appropriating money to a person to reimburse him for expenses incurred in an election contest was unconstitutional, on the ground that it constituted a gift of public money.

In State v. Gordon, 261 Mo. 631, 170 S. W. 892 (1914), the court held that an appropriation to aid consolidated schools and rural schools was not violative of the constitutional provision prohibiting the grant of public money, or aid to corporations, associations, or individuals. The court, referring to the constitutional provision, said:

"This section has no reference to corporations belonging wholly to the state, organized wholly for governmental purposes under public laws, and governed by officers duly elected or appointed according thereto;. for instance, the various eleemosynary institutions of the state, state university, normal schools, public schools, drainage and road districts, etc."

Town of Concord v. Portsmouth Savings Bank, 92 U. S. 625, 23 L. Ed. 628: The Legislature of the state of Illinois authorized incorporated cities under certain conditions to appropriate money to a railroad company in aid of the construction of a road, to be paid when the road was completed. The Constitution provided:

"No county, city, * * * township or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation. * * *" Const. Ill., art. 14.

A proviso permitted municipalities to subscribe to stock where the same had previously been authorized under existing laws and the people by vote had adopted the subscription. The court said that donations were prohibited under all circumstances.

"What is called the acceptance of the railroad company cannot be construed as an engagement to locate and build the railroad through the town. It amounted to no more than saying, 'If we build our road through your town, we will receive your gift.' There was therefore no consideration for the town's promise to give, even if the popular vote can be considered a promise."

From a review of the foregoing authorities, we are clearly of the opinion that the statute in question is in contravention of the constitutional provision quoted supra.

While there is some discussion in the briefs of counsel, on either side, as to the right of the board of county

commissioners to enter an order remitting the taxes assessed, and to be assessed, against the property owned by the fair association, this question is not involved in the case and will not be considered by the court, as the final order entered by the trial court contains no reference whatever to this subject.

For the reasons stated, the judgment should be affirmed.

HANNA, J.—I concur in the result of the foregoing opinion, but cannot agree with all the grounds set out therein. The essential divergence of opinion which I have arrived at is in respect to the conclusion that the appropriation authorized by the act in question (chapter 51, Laws of 1913) is violative of section 14 of article 9 of the Constitution, prohibiting the state or any county from making any donation to, or in aid of any person, association, or public or private corporation. I cannot agree that the appropriation provided by the said act is essentially a donation to the fair association, and believe that the facts of this case differ from the Washington case (Johns v. Wadsworth, 80 Wash. 352, 141 Pac. 892), where the Supreme Court of Washington passed upon the constitutionality of an act of the Legislature authorizing boards of county commissioners to make appropriations for the payment of expenses and premiums of agricultural fair associations. Appropriations for the purposes indicated, and such as contemplated by the act of our Legislature, are obviously for a public purpose and a public benefit. The duty resting upon courts to so construe legislative acts as to further their object, unless such acts obviously are in contravention of a constitutional provision, is of great weight in a case such as the one under consideration, and the act should be sustained by the courts where possible; but there seems to be a controlling reason upon this court which we cannot lose sight of, and which compels us to concur in the result of the opinion written by the Chief Justice, if not in the reasons assigned. The controlling principle arises by virtue of section 31 of article 4 of the Constitution, providing that:

"No appropriation shall be made for charitable, educational. or other benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state. * * * "

It would seem that the appropriation provided for by our legislative act under consideration must needs be considered an appropriation for educational purposes, and therefore in conflict with the constitutional provision quoted. It is to be noted that chapter 51 of the Laws of 1913 does not provide for any control of the fair association by the state, nor is such association accountable to or answerable to the state in any manner for the appropriation, unless it be upon the theory that a misappropriation of the fund authorized to be appropriated might be called in question upon the ground that a trust had been created by the act in question, the violation of which might permit the recovery of the fund by suit instituted for the purpose.

I therefore feel constrained to concur in the result arrived at by the CHIEF JUSTICE in the foregoing opinion, and am authorized to say that Justice PARKER concurs in the conclusions herein set out in this opinion.

