Honorable Walter A. Younglund Colorado State Representative State Capitol, Room 242 Denver, CO 80203
Dear Representative Younglund:
I am writing in response to your January 22, 1986 letter requesting a legal opinion concerning the proposed investment of state funds in a real estate limited partnership. Your letter did not ask a specific question. I have reviewed the materials enclosed with your inquiry and framed specific legal questions based upon that review and my general understanding of the proposed investment.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Do existing provisions of Colorado constitutional and statutory law authorize the state treasurer to invest state funds as a limited partner in a real estate limited partnership?
 No. The state treasurer's authority to invest state funds is limited to those specific investments approved by the General Assembly by statute. Investment in a limited partnership interest is not at present a permissible investment.
2. Do existing provisions of law authorize the state treasurer to invest public school funds in a real estate limited partnership?
 No. The state treasurer's authority to invest public school funds is limited to specific permissible investments set out by statute. Present investment statutes do not authorize investment in a limited partnership.
3. Do provisions of the Colorado Constitution prohibiting private appropriations, joint public and private ownership and pledging of the state's credit, preclude the General Assembly from enacting legislation authorizing investment of public funds in a limited partnership?
 In the absence of specific authorizing legislation, I am unable to provide a conclusive opinion on this question. The application of the relevant constitutional provisions would depend upon whether the statutory scheme serves a sufficient "public purpose."
ANALYSIS
Statement of facts.
The materials you provided describe a proposed investment for state funds. I have relied upon the facts as represented in those materials. Although those facts are complex, the proposal may be summarized briefly as follows.
It is proposed that a Colorado limited partnership (the "partnership") be formed to acquire, operate and dispose of distressed Colorado farms in order to profit from cash flows and long-term appreciation of the properties. If a farmer sells his property but is able to obtain financing to continue farming as a tenant, the partnership would attempt to retain the farmer on the property. Prior owners would be encouraged to repurchase their farms by a provision in the partnership agreement requiring that a small percentage of the partnership's gross income be set aside to be used toward a downpayment on repurchase by qualified purchasers.
Management of the partnership, including selection of properties to be purchased, operation of the farms and disposal of the properties, would be placed in the hands of a Colorado corporation, which would serve as general partner. That corporation's compensation would include 6 percent of the gross proceeds of the sale of partnership interests, a management fee during the operating phase and real estate commissions when properties are sold by the partnership.
It is proposed that the State of Colorado invest $10 million in the partnership as seed money to attract investment of additional dollars from private and institutional investors. The offering would raise a minimum of $20 million and a maximum of $50 million from all investors. The capital would be used to purchase distressed farms and the partnership would be authorized to borrow up to 50 percent of the value of the purchased property. The state would be a passive investor and have no authority to influence the choice of properties purchased, their management or to set the terms of repurchase.
The state would be entitled to repayment of its original investment prior to termination of the partnership and would be paid interest at a rate of 10 percent per annum when its investment is repurchased. The state would not share in any other gains or losses of the partnership. If the partnership's assets were insufficient to repurchase the state's interest, the state might lose part or all of its investment. The term of the partnership is 30 years, consequently the state may have no return of its principal or interest for a period of up to 30 years.
Scope of opinion.
This opinion is limited to consideration whether the state lawfully may invest public funds in a real estate limited partnership under the circumstances described above. It analyzes Colorado statutory and constitutional provisions dealing with investment of public moneys. This opinion neither approves nor disapproves any specific investment proposal. There are additional provisions of law, notably federal and state securities laws, which are not addressed because they are beyond the scope of this opinion.
Although certain policy considerations are taken into account, this letter expresses no opinion on the merits of the various policy objectives sought to be advanced by this proposal. Nor does this office have an opinion as to the likelihood that those policy objectives would be achieved by this means. Such policy considerations are matters properly evaluated by the General Assembly.
Current Colorado statutes do not authorize investment ofstate funds in the partnership.
Under provisions of the Uniform Limited Partnership Act, a limited partner is a passive investor who assumes no liability to partnership creditors beyond the original investment, unless the limited partner takes part in the control of the business. Section 7-61-108, C.R.S. (1973). Initial inquiry must be directed to whether existing Colorado statutory provisions would authorize such an investment.
By constitutional provision, the state treasurer is custodian of public funds subject to legislative provision for the safekeeping and management of those funds. Colo. Const., art. X, § 12. This section has been construed as requiring the state treasurer to make only such investments as are authorized by legislation passed by the General Assembly. See People ex rel. Miller v.Higgins, 69 Colo. 79, 168 P. 740 (1917); In re HouseResolution, 12 Colo. 395, 21 P. 486 (1888).
The principal authority for the state treasurer to invest available state funds is found in statutes authorizing him to make time deposits or to invest in other interest-bearing securities, primarily interest-bearing obligations issued by federal, state or local governments. See sections24-36-109, -112 and -113, C.R.S. (1982). In addition, the treasurer has investment authority conferred in a more general statute which specifies similar permissible investments for all Colorado governmental entities. Section 24-75-601, C.R.S. (1982). Investment of state funds in a limited partnership is not an investment permitted by any of those statutes. The treasurer is not authorized to invest in corporate stock of any type, nor any other equity interest such as the limited partnership interest under consideration.
Distinct statutory provisions govern investment of the Public School Fund, which is created by art. IX, § 3 of the Colorado Constitution. Investment decisions are made by the state treasurer subject to statutory provisions which restrict the treasurer's discretion to investments virtually identical to those he may make with other public funds. Lawful investments are restricted to time deposits in banks and savings and loan associations, plus "interest-bearing obligations" of the state, its political subdivisions, the federal government and certain corporations rated as good or high quality by nationally recognized rating organizations. Section 22-41-104, C.R.S. (1973 1985 Supp.). Investment in a limited partnership is not an authorized investment for public school funds.
A related statute authorizes the treasurer to invest public school moneys in financial transactions whereby "obligations" are transferred or sold subject to repurchase agreements. Section22-41-104.5, C.R.S. (1985 Supp.). Examination of the tapes of the legislative history of this statute reveals that this additional provision was enacted to make investment of Public School Fund moneys consistent with similar investments authorized for other public funds by section 24-36-113, C.R.S. (1982). In particular, it was intended to permit the treasurer to enter into repurchase agreements secured by federal interest-bearing obligations. There is no legislative evidence that the statute was ever intended to authorize the treasurer to invest in the obligation of a limited partnership.
The term "obligations" as used in section 22-41-104.5, C.R.S. (1985 Supp.) must be construed narrowly. The statute limits investments to those involving "interest-bearing obligations" which the state treasurer is authorized by section 22-41-104, C.R.S. (1973 1985 Supp.) to purchase with moneys of the Public School Fund.
My opinion that the investment statute must be construed narrowly is buttressed by constitutional requirements which make the safety of the Public School Fund a paramount consideration. While the Colorado Constitution requires that the Public School Fund "shall be securely and profitably invested," art. IX, § 3 further mandates that the fund "shall forever remain inviolate and intact." The state constitution requires those funds to be used only for the purposes of public schools. Any loss accruing from investment of Public School Fund moneys in the proposed investment would have to be replaced from other funds of the state. Consequently, "the security of the investment is of the first and highest importance." In re Loan of SchoolFund, 18 Colo. 195, 32 P. 273, 274 (1893).
If the General Assembly proposes to expend the Public School Fund for the purpose of aiding Colorado farmers, then that expenditure may be contrary to the constitutional requirement that the Public School Fund be used only for the benefit of public schools.But see People ex rel. Miller v. Higgins,supra. If the expenditure is viewed as a business investment, then the General Assembly must seriously weigh the risks of this investment as well as the fact that there may be no return on the investment for up to 30 years.
Limitations of the Colorado Constitution bar the GeneralAssembly from authorizing an expenditure which is not for apublic purpose.
When the Colorado Constitution was drafted, there was substantial public concern that public funds would be used for speculation in private railroad corporations. That practice was viewed as the economic savior of many Colorado communities but too often resulted in a business failure with loss of public moneys. This experience led the drafters of the state constitution to include certain provisions intended to end speculation with public funds in private business ventures. Colorado Central R.R. Co. v.Lea, 5 Colo. 192 (1879). See Comment, StateConstitutional Provisions Prohibiting the Loaning of Credit toPrivate Enterprise — A Suggested Analysis, 41 U. Colo. L. Rev. 135 (1969).
Article XI, section 2, bars the state from becoming a shareholder in any corporation or a joint owner with any person, company or corporation. Article XI, section 1, prohibits the state from pledging its credit or becoming responsible for the debt of any person, company or corporation. Article V, section 34, bars the appropriation of public funds to any person or corporation "not under the absolute control of the state."
Early decisions of the Colorado Supreme Court used one or another of these provisions to invalidate local laws which made available public funds to railroad corporations and state laws which provided relief to drought-stricken farmers in certain areas of the state. In both cases, the existence of important public policies underlying these measures was held to be an irrelevant consideration as a matter of constitutional law. ColoradoCentral R.R. Co. v. Lea, supra; In re ReliefBills, 21 Colo. 62, 39 P. 1089 (1895).
More recent judicial decisions have abandoned this construction. It is now recognized that these constitutional prohibitions against using public moneys for joint ownership with private parties or to benefit private interests, do not preclude legislation enacted for a "public purpose." See, e.g.,Americans United for Separation of Church and State Fund,Inc. v. Colorado, 648 P.2d 1072 (Colo. 1982) (Colo. Const., art. V, § 34); Gude v. City of Lakewood, 636 P.2d 691,695 n. 2 (Colo. 1981) (Colo. Const., art. XI, § 1);Denver Urban Renewal Authority v. Byrne, 618 P.2d 1374
(Colo. 1980) (Colo. Const., art. XI, § 2).
Although a public purpose is presumed from passage of a legislative enactment (and may be evident in a legislative declaration), not every statutory appropriation is constitutional. Americans United for Separation of Churchand State Fund, Inc. v. Colorado, supra, at 1086. In the Americans United case, the court considered application of the article V, section 34 prohibition against private appropriations, and set out the following test:
 [T]he legislation must evince a discrete and particularized public purpose which, when measured against the prescription of Article V, Section 34, preponderates over any individual interests incidentally served by the statutory program.
648 P.2d at 1086. (Emphasis added.)
No legislation has been drafted, consequently the legislature has not yet made findings concerning a "discrete and particularized public purpose" to be served by this proposal. While it is possible to speculate about possible public purposes, I am unable to provide a conclusive legal opinion without explicit legislative findings. This is particularly true where the private benefits accruing to the general partner and the other private investors are not merely incidental. This partnership is formed to make a profit for its investors and its general partner.
Nonetheless, the fact that private individuals receive a direct benefit has been held not to invalidate legislation where a significant public purpose exists. A legislative determination that public purposes preponderate over any private benefits would be given considerable deference by the courts. Bedford v.White, 106 Colo. 439, 454, 106 P.2d 469, 476 (1940).
If the General Assembly intends to use this limited partnership as an instrument of public policy, then an additional constitutional provision may be relevant to this investment proposal. Article XI, section 3, of the Colorado Constitution has been construed as prohibiting legislation which would obligate a future legislature to appropriate state funds to discharge a debt created by the legislation. In re Colorado StateSenate, 193 Colo. 298, 566 P.2d 350 (1977). Under your proposal, the state would be a limited partner and would have no liability beyond its initial investment so long as it did not take part in the control of the business. If, however, the state attempts to play a more active role in the partnership (such as purchasing or managing farm properties or setting details of tenancy and repurchase) it may subject itself to additional liability for the debts of the partnership under the law of limited partnerships. Article XI, section 3 may be violated under those circumstances because the effect would be to subject a future legislature to an obligation created by the original legislation. In addition to other drafting considerations discussed above, any proposed legislation should mandate that the state not take an active role in the management of the partnership. As an alternative, the General Assembly may wish to consider creating an independent political subdivision, similar to the Colorado Housing Authority or various urban renewal authorities, to effectuate these public policies. See,e.g., In re Colorado State Senate,supra.
SUMMARY
It is my opinion that no statutory authority currently exists which authorizes investment of state funds in a real estate limited partnership as proposed. I am unable at this time to form an opinion whether future legislation authorizing such an investment would be constitutional. In order to satisfy constitutional restrictions, such legislation would have to convincingly demonstrate a discrete and particularized public purpose which would preponderate over any private interests incidentally served.
Very truly yours,
 DUANE WOODARD Attorney General
PUBLIC FUNDS TREASURER, STATE INVESTMENT CORPORATIONS
Section 7-61-108, C.R.S.(1973) Section 22-41-104, C.R.S. (1973 1985 Supp.) Section 22-41-104.5, C.R.S. (1985 Supp.) Sections 24-36-109, -112 and -113, C.R.S. (1982) Section 24-36-113, C.R.S. (1982) Section 24-75-601, C.R.S. (1982)
Colo. Const. art. V, § 34
Colo. Const. art. IX, § 3
Colo. Const. art. X, § 12
Colo. Const. XI, § 1 Colo. Const. XI, § 2 Colo. Const. art. XI, § 3
LEGISLATIVE BRANCH House of Representatives
Current statutes do not authorize investment of state funds in a real estate limited partnership. Legislation authorizing that investment must specify a sufficient "public interest."