| 12 | 395 |
|----|-----|
| 17 | 172 |
| 12 | 395 |
| 5a | 458 |

## IN RE HOUSE RESOLUTION RELATING TO HOUSE BILL No. 349.

1. STATE TREASURER — LIABILITY — CONTROL OF FUNDS.— Under Constitution, article 10, section 12, relating to the duties of the state treasurer, and providing that the legislature may provide "further regulations for the safe-keeping and management of the public funds in the hands of the treasurer, but, notwithstanding any such regulation, the treasurer and his sureties shall in all cases be held responsible therefor," no statute adopted to regulate the safe-keeping of the public moneys can operate to relieve the state treasurer or his sureties from liability on his official bond.

2. The treasurer being absolutely liable, the legislature cannot, directly or indirectly, divest him of his general control of the custody of the public moneys before disbursement or investment; hence a bill authorizing the governor to dictate the particular banks in which such moneys shall be deposited is invalid.

THE matter submitted to the supreme court for consideration appears in the communication presented, as follows:

"Whereas, it is a mooted question whether the passage of bill No. 349, as amended, would so take from the hands of the state treasurer the funds of the state as to relieve said treasurer, and the sureties upon his official bond, from liability to the state for the loss of any funds deposited in accordance with the provisions of said bill; and whereas, the question is one of vital importance at this time; therefore be it resolved that a copy of said bill, together with the following question, be submitted to the supreme court of this state, with a request for an early reply.

"*Question.* Will the enactment into a law of house bill No. 349, as attached hereto, affect in any way the liability of the state treasurer, and the sureties upon his official bond, for funds deposited in accordance with the provisions of said bill, and is said bill authorized by section 12, article 10, of the constitution of this state?"

Section 12, article 10, of the constitution, referred to in the legislative communication, and also in the opinion, reads: "The treasurer shall keep a separate account of each fund in his hands, and shall, at the end of each quarter of the fiscal year, report to the governor in writing, under oath, the amount of all moneys in his hands to the credit of every such fund, and the place where the same are kept or deposited, and the number and amount of every warrant received, and the number and amount of every warrant paid therefrom during the quarter. Swearing falsely to any such report shall be deemed perjury. The governor shall cause every such report to be immediately published in at least one newspaper printed at the seat of government, and otherwise as the general assembly may require. The general assembly may provide by law further regulations for the

safe-keeping and management of the public funds in the hands of the treasurer; but, notwithstanding any such regulation, the treasurer and his sureties shall in all cases be held responsible therefor."

PER CURIAM. The first branch of the question propounded must be answered in the negative. No statute adopted to regulate the safe-keeping of the public moneys can operate to relieve the state treasurer or his sureties from liability upon his official bond. The responsibility of that officer and his sureties for the protection and safety of the public funds while in his hands is irrevocably fixed by the constitutional mandate. Sec. 12, art. 10, Const.

The second branch of the question is not so easily answered. It is hardly possible that the framers of the constitution intended to make the treasurer and his sureties absolutely responsible for the security of the public funds, and yet authorize the legislature to lodge with some other official the control thereof. Such a purpose, besides being illogical, offends the sense of fair dealing and justice animating reasonable and impartial minds. The responsibility and control for safe-keeping naturally belong together. Official bonds of this nature are required for the very purpose of protecting the public from loss through the negligence, misconduct or misfortune of those having the *custody* of public moneys.

The treasurer is the constitutional custodian of these moneys. The legislature cannot devolve this stewardship upon another. That body may command him to disburse such funds as it shall see fit, subject only to constitutional restriction, and it may also direct the investment of the school fund. But for the safe-keeping of the public moneys, till paid out or invested as authorized by statute, he alone is responsible.

The bill submitted for our consideration commands the treasurer to deposit the public funds in such banks

as shall be approved by the governor. The governor may reject all the banks first reported by the treasurer, and compel the latter officer to submit a new and different list. The second list may in turn also be set aside, and thus all banks in the state regarded as reliable by the treasurer may be rejected; or, from one of the lists presented, the governor may strike off all but a single bank, and thus force the treasurer to deposit the entire funds of the state therein. To distribute these funds judiciously among ten specified banks might be perfectly safe, yet to deposit them all in one of the ten might be extremely hazardous.

Thus the governor, who has no financial responsibility whatever, may in effect dictate to the treasurer, who has the entire responsibility, where the funds shall be lodged. We do not suppose that any governor would thus employ the authority conferred. We are simply discussing the power of that officer under the proposed legislative act.

Moreover, if the legislature may exercise the authority here assumed, we hardly see where any limit can be placed. If it is competent for this body to say that the governor may, directly or indirectly, name the place of deposit for state funds, it is also competent for it to say that he shall appoint the deputy-treasurer, book-keeper and all other employees required in keeping the accounts and transacting the business of the treasury department. In short, the legislature might absolutely deprive the treasurer of all control, power or authority over the public funds, and leave him but the poor privilege of being responsible upon his official bond for defalcations or losses in connection therewith.

It is eminently proper, and, in view of section 13, article 10, of the constitution, it may be a legislative duty, to provide by statute that all interest paid by banks upon public funds deposited with them shall be placed to the credit of the state. Nor is there any doubt concerning the legislative authority to require periodical reports,

1888.] IN RE QUESTION BY GOVERNOR. 399

under oath, from the treasurer and from bank officials, showing the terms and conditions of the deposits in question, including the rate of interest allowed thereon. Reasonable legislative regulations, in addition to those named by the constitution, looking to the safe-keeping and management of public funds, may be a wise precaution; and, if they regulate the control thereof without withdrawing it from the treasurer, we perceive no constitutional objection thereto.

The foregoing views we believe to be in harmony with both the letter and spirit of the constitutional provision to which our attention is invited. The regulations there mentioned are to be operative only while the funds are "in the hands of the treasurer;" that is to say, until they are disbursed in the liquidation of state indebtedness, in accordance with such statutory provisions as may be adopted or invested in pursuance of authority elsewhere given by the constitution. We are unable to discover in the section of that instrument before us an intention to authorize or permit the legislature, either directly or indirectly, to divest the treasurer of his general control in the premises prior to such disbursement or investment.

In conclusion, responding to the second branch of the question before us, we feel reluctantly compelled to say that, in so far as the bill submitted authorizes the governor to dictate the particular banks in which the public funds shall be deposited, it is inconsistent with the purpose of the constitutional provision mentioned.