B.J. Thornberry Deputy Treasurer Department of the Treasury 140 State Capitol Denver, Colorado 80203
Dear Ms. Thornberry:
You have asked whether the state treasurer is the "official custodian" of state college and university funds and, if so, whether each college or university is a separate "public unit" for purposes of deposit insurance coverage by the Federal Deposit Insurance Corporation ("FDIC") and the Federal Savings and Loan Insurance Corporation ("FSLIC").
QUESTIONS PRESENTED AND CONCLUSIONS
Whether the state treasurer is the official custodian of any or all of the funds of the state colleges and universities.
 With the possible exception of certain "special funds," the state treasurer is the official custodian of the funds of all state college and university governing boards.
If so, whether the funds of each state college or university governing board deposited by the treasurer in a federally insured bank or savings and loan association will be separately insured up to a maximum of $100,000?
No.
ANALYSIS
This office has on several occasions analyzed the scope of federal insurance coverage for deposits of state moneys in Colorado banks and savings and loan associations. In earlier opinions, we have examined several different state agency accounts (April 10, 1978; April 20, 1981; February 18, 1983; May 8, 1985; and, November 19, 1985). However, none of these opinions have dealt with state institutions of higher education. Therefore, before turning to your substantive questions, a preliminary issue must be addressed. You have asked about federal insurance coverage of deposits made by state "colleges and universities." The Legislature has established several corporate governing boards to which general control and supervision of individual state institutions of higher education has been committed. The colleges and universities under these boards' governance have no independent legal existence. Seegenerally Rivas v. State Board for Community Collegesand Occupational Education, 517 F. Supp. 467 (D. Colo. 1981). My analysis of deposit insurance coverage of institutional funds thus focuses on the governing boards and not on the subordinate colleges and universities the boards manage.
This opinion will consider the "public unit" status of the following governing boards (hereafter referred to as the "governing boards" or "boards"): (1) the Board of Regents of the University of Colorado, sections 23-20-101 to 135, C.R.S. (1973 
1986 Supp.); (2) the State Board of Agriculture (Colorado State University, Fort Lewis College, University of Southern Colorado), sections 23-30-101 to 116, C.R.S. (1973 1986 Supp.); (3) the Board of Trustees of the University of Northern Colorado, sections 23-40-101 to 105, C.R.S. (1973 1986 Supp.); (4) the Board of Trustees of the Colorado School of Mines, sections23-41-101 to 122, C.R.S. (1973 1986 Supp.); (5) the Trustees of the Consortium of State Colleges in Colorado (Metropolitan State College, Mesa College, Western State College of Colorado, Adams State College of Colorado), sections 23-50-101 to 112, C.R.S. (1973 1986 Supp.); (6) The State Board for Community Colleges and Occupational Education (Arapahoe Community College, Community College of Aurora, the Community College of Denver, Front Range Community College, Lamar Community College, Morgan Community College, Otero Junior College, Pikes Peak Community College, Pueblo Community College, Red Rocks Community College, and Trinidad State Junior College), sections 23-60-101 to 210, C.R.S. (1973 1986 Supp.) and (7) The Board of Directors of the Auraria Higher Education Center, sections 23-70-101 to 112, C.R.S. (1986 Supp.).[1]
Under federal law, each "official custodian" of the funds of a "public unit" depositing the public unit's moneys in a federally insured bank or savings and loan association ("S L") is separately insured by the FDIC or FSLIC up to $100,000 for such deposits. See 12 U.S.C. § 1813(m)(1) and 1728(d)(1)(ii)(1980). In other words, if a single public unit has more than one official custodian, each custodian depositing the public unit's funds in a particular bank or S L is a separately insured depositor. Conversely, when the same person acts as the official custodian of the funds of two or more public entities, the deposits of each entity at a federally insured institution will be separately insured up to the $100,000 maximum, if, but only if, each entity is a separate "public unit." See12 C.F.R. secs. 330.8(a)(6) and 564.8(a)(2)(1986).
Therefore, for the purpose of determining whether deposits of governing board funds in a federally insured bank or S L will be separately insured to the maximum amount or aggregated with other public moneys by the FDIC or the FSLIC, two questions must be answered: (1) is the state treasurer or some other person(s) the official custodian(s) of the deposited funds? and (2) are the deposits attributable to the same or separate public units?
It must be borne in mind that these are questions of federal, not state, law. Although state constitutional, statutory, and decisional law play an important part in my analysis, my interpretations of "official custodian" and "public unit" must be guided as well by the federal legislation and its implementing regulations. Moreover, because I cannot predict with certainty how the FDIC or FSLIC will apply these terms to deposits of governing board funds, and because an adverse agency ruling could lead to protracted litigation and expose the state to substantial uninsured losses in the event of a bank or S L failure, my answers to your inquiries reflect a conservative reading of state law intended to minimize the risk of inadequate federal deposit insurance coverage. I must therefore emphasize the narrow scope of this opinion: my conclusions are addressed solely to FDIC and FSLIC insurance issues; they are not definitive or unqualified interpretations of the respective duties and powers of the state treasurer and Colorado's state college and university governing boards.
Role of the state treasurer with respect to deposits ofgoverning board funds.
In my previous opinion to you of May 8, 1985, I reviewed the state treasurer's role with respect to the custody of state funds. I stated there:
 The Colorado Constitution provides that the state treasurer is custodian of all "public funds" subject to legislative provision for safekeeping and management of those funds. Colo. Const. art. X, § 12. All departments of state government are required by statute to transmit moneys received by them to the treasury department for safekeeping unless specifically exempted. Section 24-36-103, C.R.S. (1982).[2]
However, unlike the state agencies to which that and earlier opinions of this office referred, the governing boards possess certain unique constitutional powers. Colo. Const. art VIII, §5(1) provides:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
(Emphasis added.)
The underscored language of art. VIII, § 5(1) could be interpreted to divest the treasurer of the exclusive stewardship of state moneys otherwise granted him by Colo. Const. art. X, § 12. See In re House Resolution Re House BillNo. 349, 12 Colo. 395, 397, 21 P. 486, 487 (1889). However, "[t]he same principle which requires that two statutes be reconciled, if possible, and both be given effect, applies in the interpretation and application of different sections of the same Constitution." People ex rel. Miller v. Higgins,69 Colo. 79, 82, 168 P. 740, 741 (1917). In my opinion, art. X, § 12 and art. VIII, § 5(1) may be so harmonized. Colo. Const. art. X, § 12 and the treasurer's statute, section 24-36-101, C.R.S. (1982), merely make the treasurer the custodian of state moneys, responsible "for [their] safekeeping . . . till paid out or invested as authorized by statute." In re HouseResolution, supra, 12 Colo. at 397, 21 P. at 487. This definition of custody is not incompatible with a constitutional or legislative grant of exclusive control and direction of state funds to a governing board, commission or other entity. See Stong v. IndustrialCommission, 71 Colo. 133, 204 P. 892 (1922); People exrel. Miller v. Higgins, supra. Black's LawDictionary (4th ed. rev. 1979) 461 (quoting fromSouthern Carbon Co. v. State, 171 Misc. 566,12 N.Y.S.2d 7, 9) notes that:
 ["Custody"] is defined as the care and possession of a thing and means the keeping, guarding, care, watch, inspection, preservation or security of a thing and carries with it the idea of the thing being within the immediate personal care and control of the person to whose custody it is subjected; charge; immediate charge and control, and not the final, absolute control of ownership, implying responsibility for the protection and preservation of the thing in custody.
(Emphasis added.)
Since the treasurer, as the custodian of governing board funds, has neither direction nor final control thereof — which are reserved to the boards — but instead sees only to their safekeeping, care, and security until disbursed or invested as authorized by statute, his constitutional and statutory stewardship of the funds conflicts with neither Colo. Const. art VIII, § 5(1) nor the specific statutes granting control and direction of their funds to the boards themselves. The treasurer, therefore, should be deemed to be the official custodian of the governing board funds received and deposited by him in accordance with state statutes and the fiscal rules promulgated by the controller.[3] [4]
Status of the governing boards.
Inasmuch as the state treasurer is the "official custodian" of most governing board funds, the decisive question for FDIC and FSLIC insurance purposes is whether the funds held by the treasurer for each board in a federally insured financial institution are the moneys of a separate "public unit". Because the governing boards enjoy equal autonomy under Colo. Const., art. VIII, § 5(1) (as explained in my Opinion to Blenda Wilson of December 26, 1984 at 2-3), their status may be analyzed collectively.
A "political subdivision" or "principal department" of the state will be deemed to be a separate "public unit" if it satisfies three criteria:
 (1) the creation of which subdivision or department has been expressly authorized by State statute, (2) to which some functions of government have been delegated by State statute, and (3) to which funds have been allocated by statute or ordinance for its exclusive use and control. . . . Excluded
from the term are subordinate or nonautonomous
divisions, agencies, or boards within principal departments.
12 C.F.R. § 330.8(c) (1986) (emphasis added). A substantially identical definition has been adopted by the FSLIC. See
12 C.F.R. § 561.5a (1986).
Assuming for the purposes of the questions presented that the boards meet the first three conditions, the question remains whether they are autonomous political subdivisions or principal departments of state government ornonautonomous divisions, agencies or boards within a principal department.
The principal departments of Colorado's state government are established by state law. The state Constitution directs the Legislature to allocate all executive agencies or instrumentalities to one of a maximum of 20 principal departments. See Colo. Const. art. IV, §22.[5] By statute, the Department of Higher Education is denominated a principal department of the state. See
sections 24-1-110(1)(d) and 114, C.R.S. (1982). The governing boards of the state institutions of higher education have, in turn, been allocated to the Department of Higher Education, with the caveat that they "shall otherwise, continue to be administered as provided by law." Section 24-1-114(4), C.R.S. (1982).
Under state law, therefore, the governing boards are not principal departments of the State of Colorado. Since they have been allocated to the principal Department of Higher Education, the key issue is whether they are therefore "nonautonomous divisions, agencies or boards" of the department within the meaning of the federal regulations.
Under Colo. Const. art. VIII, § 5(1), the governing boards' powers of general supervision of their subordinate institutions and exclusive control and direction of institutional funds and appropriations are qualified by a proviso that the Legislature may "otherwise provide by law." The Legislature has created the Colorado Commission on Higher Education ("CCHE" or the "Commission") as a board within the Department of Higher Education. See section 23-1-114(a), C.R.S. (1982). In 1985 the General Assembly substantially increased CCHE's responsibilities over higher education. See sections23-1-101 to 23-1-116, C.R.S. (1986 Supp.).
CCHE's newly augmented powers could readily lead FDIC and/or FSLIC officials to conclude that the governing boards are "nonautonomous divisions, agencies or boards" under12 C.F.R. secs. 330.8(c) and 561.5(a) and hence ineligible for separate "public unit" status. As support for this conclusion, the FDIC and/or FSLIC could cite the following statutory provisions subordinating certain governing board functions to CCHE oversight and regulation.
The governing boards are legally bound to comply with policies and directives issued by CCHE.
 The governing boards and institutions of the public system of higher education in Colorado, including the university of Colorado, are obligated to conform to the policies set by the commission within the authorities delegated to it in this article.
Section 23-1-102(2), C.R.S. (1986 Supp.). CCHE determines the distribution formula for appropriations to each governing board.See section 23-1-105(3), C.R.S. (1986 Supp.). The Commission is authorized, within statutory guidelines, to determine the role and mission of each institution. See
section 23-1-108(1)(c), C.R.S. (1986 Supp.). Moreover, the Commission is authorized to develop a statewide master plan for higher education, and to recommend to the Legislature which campuses of an institution should be closed. See
section 23-1-108(2), C.R.S. (1986 Supp.). Governing boards must obtain Commission approval in order to establish new programs of instruction, see section 23-1-107(1), C.R.S. (1986 Supp.), and to provide off-campus instruction. See
section 23-1-109, C.R.S. (1986 Supp.). The Commission also has the authority to direct a governing board to discontinue an academic or vocational degree program. See section23-1-107(2)(a), C.R.S. (1986 Supp.). If a governing board refuses to do so, it must remit any appropriations for such a program to the General Fund. See section 23-1-107(2)(c), C.R.S. (1986 Supp.).
Although the governing boards retain substantial autonomy in other matters, the powers recently conferred on CCHE cast grave doubt on their status as autonomous "public units" within the meaning of the FDIC and FSLIC regulations. On balance, giving considerable weight to the severe uninsured financial losses which could ensue if the FDIC and FSLIC were to rule that each governing board's funds are not separately insured, I must conclude that the boards are "nonautonomous" bodies within the principal Department of Higher Education. However, I again emphasize that I have reached this conclusion solely for the purpose of assuring that deposits of governing board funds are fully insured or collateralized in the event of a bank or S L failure; this opinion is not intended to apply — directly or inferentially — to other, purely intrastate questions which may arise concerning the status and powers of the state's governing boards.
SUMMARY
For the reasons stated above, it is my opinion that the governing boards of the state institutions of higher education may not be entitled to separate federal insurance coverage for deposits held on their behalf by the state treasurer. Each such deposit is likely to be aggregated with the funds of other governing boards and other agencies within the Department of Higher Education deposited in the same insured institution.
As you are aware, the controlling opinion on the application of federal insurance coverage would be that of the FDIC and FSLIC. Consequently, before you act upon the opinions expressed in this letter you should seek review of this response, and your policy, by the appropriate federal officials.
Very truly yours,
 DUANE WOODARD Attorney General
cc: Colorado Department of Higher Education Board of Regents of the University of Colorado State Board of Agriculture Board of Trustees of the Colorado School of Mines Board of Trustees of the University of Northern Colorado Trustees of the Consortium of State Colleges in Colorado State Board for Community Colleges and Occupational Education Board of Directors of the Auraria Higher Education Center
TREASURER, STATE EDUCATION, HIGHER PUBLIC FUNDS BANKS AND BANKING INSURANCE
12 U.S.C. § 1813(m)(1) (1980) 12 U.S.C. § 1728(d)(1)(ii) (1980)
Sections 24-36-101 and 103, C.R.S. (1982) Sections 23-1-101 to 116, C.R.S. (1985 Supp.)
Colo. Const. art. VIII, § 5(1) Colo. Const. art. X, § 12
TREASURY, DEPT. OF HIGHER EDUCATION, DEPT. OF UNIVERSITY OF COLORADO AGRICULTURE, ST. BD. OF COLO. SCHOOL OF MINES UNIV. OF NORTHERN COLORADO TRUSTEES OF STATE COLLEGES COMM. COLL. OCC. ED. BD. AURARIA HIGHER EDUC. CNTR
For purposes of Federal Deposit Insurance Corporation ("FDIC") and Federal Savings and Loan Insurance Corporation ("FSLIC") insurance of state funds deposited in federally insured banks and savings and loan associations, the state treasurer is the "official custodian" of the funds of the governing boards of state institutions of higher education. The governing boards of state institutions of higher education are not separate "public units" within the meaning of FDIC and FSLIC regulations, but are likely to be characterized as "nonautonomous" divisions or boards within the Department of Higher Education; therefore, governing board funds and other funds of the Department of Higher Education deposited by the state treasurer in a federally insured bank or savings and loan association will, in the aggregate, be insured for no more than $100,000.
[1] It should be noted that there are several other state entities connected with state higher education which arenot included within the scope of this opinion. These other entities are excluded because they are neither governing boards nor colleges and universities. For instance, the Colorado Historical Society has been held not to be a postsecondary educational institution. Morrow v. Sudler,502 F. Supp. 1200, 1206 n. 3 (D. Colo. 1980). Neither are state vocational schools "colleges or universities." Also excluded from the scope of this opinion are state agencies such as the Colorado Commission on Higher Education and the Department of Higher Education, (sections 23-1-101 to 23-1-116, C.R.S. (1986 Supp.) and 24-1-110(d) and 114, C.R.S. (1982), respectively) which have distinctive powers in the field of postsecondary education but do not govern subordinate colleges or universities. There are also two independent statutory entities which are excluded because, by law, they are not state agencies: the Colorado Student Obligation Bond Authority (sections 23-3.1-201 to 224, C.R.S. (1986 Supp.)); and the Colorado Postsecondary Educational Facilities Authority (sections 23-15-101 to 130, C.R.S. (1986 Supp.)).
If you wish, questions about excluded entities will be addressed in a subsequent opinion.
[2] Section 24-36-103(2), C.R.S. (1982) permits agencies acting with the controller's and treasurer's approval to deposit certain moneys (such as funds received from the operation of a business-type enterprise) in their own accounts. The governing boards are also specifically authorized by statute to receive and hold in trust gifts and bequests of money, section 23-5-112, C.R.S. (1986 Supp.), which, together with some other moneys received and held by certain governing boards, may constitute "special funds" exempt from the treasurer's constitutional custodianship.See generally Stong v. Industrial Commission,71 Colo. 133, 204 P. 892 (1922).
[3] As I have noted above, certain moneys received by the governing boards may comprise "special funds" exempt from the treasurer's constitutional custodianship. Whether the treasurer is nevertheless the statutory custodian of these moneys — or whether their custody is given to agents of the governing boards — will depend on the statutes establishing the funds in question. See Stong v. IndustrialCommission, supra. An apparent example of a "special fund" is the fund established by section 23-20-121, C.R.S. (1973) from the proceeds of the sale or rental of public lands belonging to the regents of the University of Colorado.See also section 23-5-112, C.R.S. (1986 Supp.) (gifts and bequests to the governing boards).
[4] I am not unmindful that the Legislature has authorized many of the governing boards to elect treasurers who are made responsible for the safekeeping and disbursement of the boards' funds, See, e.g., section 23-20-109, C.R.S. (1973) (Board of Regents of the University of Colorado); sections23-41-108 and 110, C.R.S. (1973) (Colorado School of Mines); section 23-50-106, C.R.S. (1973) (Board of Trustees of the Consortium of State Colleges in Colorado). Several boards have, moreover, been expressly empowered to make or direct the state treasurer to make certain investments. See,e.g., sections 23-20-118, 119 and 120, C.R.S. (1973 
1986 Supp.) (Board of Regents of the University of Colorado); section 23-30-116, C.R.S. (1973) (State Board of Agriculture, Hesperus account).
I do not, however, believe that these statutes are inconsistent with the state treasurer's role as the "official custodian" of governing board funds within the meaning of the FDIC and FSLIC regulations. Although the state treasurer's constitutional stewardship of public moneys "cannot devolve . . . upon another,"In re House Resolution, supra,12 Colo. at 397, 21 P. at 487, Colo. Const. art. X, § 12 authorizes the Legislature to "provide by law for the safekeeping and management of the public funds in the custody of the state treasurer." This legislative authority to reasonably regulate the control of public funds in the treasurer's custody and even, in some instances, to designate agents to carry out its regulations,see People ex rel. Miller v.Higgins, supra, 69 Colo. at 85, 168 P. at 742, sweeps broadly enough to countenance the delegation of certain derivative powers to officers of the governing boards.See id.; Stong v. IndustrialCommission, supra. Cf. In reHouse Resolution, supra. It is not, however, necessary to delve more deeply into the relationship among the state treasurer and treasurers elected by the boards to answer the question whether the state treasurer is the "official custodian" of board funds. Whatever powers of safekeeping and management the Legislature may have delegated to the boards and their treasurers under the first clause of article X, section 12,In re House Resolution, supra, subordinates their powers to the state treasurer's paramount constitutional custodianship of board funds — leading to the conclusion that, at least for federal deposit insurance purposes, he, not the boards' treasurers, is the "official custodian" of those funds.
[5] It should be noted that the federal use of the term "principal department" is not defined. It should not necessarily be assumed that the state and federal uses of this one term are synonymous.