## No. 9183.

### PEOPLE, EX REL., v. HIGGINS, AS STATE TREASURER.

Decided November 5, 1917.

*Original Proceeding in Mandamus.*
*Alternative writ made absolute.*

1. CONSTITUTIONAL LAW—*Construction.* The same principle which requires that two statutes be reconciled if possible, and both

given effect, applies in the interpretation of different sections of the constitution.

2. STATUTE—*Constitutionality.*    Chap. 122, S. L. 1917, providing *inter alia,* that school funds may be loaned on unencumbered cultivated farm lands within the state of Colorado, is not in conflict with sec. 1, art. II; sec. 25, art. V, or sec. 12, art. X of the state constitution, and is constitutional.

3. OFFICERS—*State Treasurer.*    The state treasurer is only responsible for public funds in his possession until they pass out of his hands by lawful means or procedure, upon valid claims or legal loans.

Mr. LESLIE E. HUBBARD, Attorney General, Mr. FRANCIS E. BOUCK, Deputy, for petitioner.

Mr. GEORGE P. STEELE, for respondent.

*En banc.*

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

THE relators, in attempting to carry out the provisions of the legislative act, adopted at the general election in 1916, entitled: "An Act in relation to the investment of the Public School Fund," Chapter 122, Session Laws 1917, page 446, were unable to do so because of the refusal of respondent to pay the amount of a loan ordered and approved by relators under the provisions of the statute.    It is conceded that relators and the applicant for the loan have performed the duties imposed upon them by the terms of the act; and that, unless the statute is unconstitutional, the alternative writ heretofore issued out of this court should be made absolute.

Stated briefly, the legislative act provides, *inter alia,* that the school funds of the state shall be invested as directed by the State Board of Land Commissioners, in certain designated securities, among which are "loans on unincumbered cultivated farm lands within the State of Colorado, and in manner" as provided in the statute.    The act pre-

scribes that such loans shall be made only to persons who are actual residents on such land, the appraised value of which is not less than five dollars per acre, limits the amount that may be loaned to any one person, and fixes the rate of interest thereon. It requires that such loans be evidenced by the promissory note or notes of the borrower, and that the payment of the same shall be secured by a deed of trust to the public trustee in favor of the state upon real estate of such borrower of an appraised value of at least three times the amount of the sum borrowed. It requires the title to the land to be examined, and that the deed of trust securing the loan shall be a first lien upon the real estate. In case of default in the payment of the loan or interest thereon, the act provides for the collection of the entire sum "by foreclosure or such other procedure as may be necessary and appropriate." It authorizes the state, through certain designated officers, but does not require it, to bid in the real property at foreclosure sale, and provides that whenever any land is bid in by the state and is not redeemed according to law, a deed therefor shall be executed to the state and be recorded in the proper county; and requires the proper officials to levy and collect a tax upon all the taxable property in the state sufficient for the purpose and to reimburse the school fund for the amount of the loan. It further authorizes the State Board of Land Commissioners to sell such land so purchased and requires the proceeds thereof to be credited to the general fund of the state whether the same be "in excess of or less than the amount of the original loan," etc.

Respondent contends that as the legislative act empowers the state to become the purchaser at foreclosure sale of the lands securing the loan and requires it in case of purchase to raise by levy upon all taxable property within the state a fund sufficient for the purpose, and to reimburse the school fund for the amount of such loan, etc., it is in conflict with Section 1 of Article 11 of the Constitution. We do not concur in this view. The section prohibits the state, its subdivisions and municipalities from becoming respon-

sible for the obligations or liabilities of any person, company or corporation whatever.

But there is another provision of the organic law—Section 3 of Article 9—that must be considered. This section makes the state treasurer the custodian of the school fund, commands that such fund shall be securely and profitably invested as may be by law directed, and makes it the imperative duty of the state to supply all losses of such fund that may in any manner occur. The same principle which requires that two statutes be reconciled, if possible, and both be given effect, applies in the interpretation and application of different sections of the same constitution, and we find no difficulty in holding that the state must be required to observe and obey these constitutional provisions. It has not failed in that regard by the enactment of the statute in question. Between these constitutional provisions and the statute we find no conflict. Under the statute the state, acting through its proper agents, may become the purchaser of the real estate securing the loan at a foreclosure sale thereof. It is equally true, however, that it need not become such purchaser. It may resort to any lawful "procedure that may be necessary and appropriate" in the collection of the loan. The statute does not, either directly or indirectly, impose upon the state any liability in the premises. The liability to replenish the school fund in case of loss thereto is by virtue of the constitutional provision. *Leddy, State Treasurer, v. The People, ex rel.,* 59 Colo. 120, 147 Pac. 365. There is nothing whatever in the statute enlarging the constitutional contingent liability, but simply provision made for the discharge thereof, if the same should become absolute. Since the state must, by constitutional mandate, make good all loss to the school fund, however occasioned, it is not under the necessity of waiting until loss occurs before the machinery essential to the discharge of its duty in the premises is created. The investment in the state of the right to become the purchaser at foreclosure sale constitutes a safeguard against loss which might otherwise result from a borrower's fail-

ure to repay a loan. Whatever may be realized from subsequent sale of the property diminishes correspondingly the amount necessary for reimbursement of the school fund. It is, in effect, the protection which a prudent, conservative person values, and is in no sense an assumption of liability by the creditor. The same principle underlies this clause of the statute that is found in the one that authorizes counties to become the purchasers of property at delinquent tax sales. By acting thereunder the state in no sense assumes an illegal liability and in levying a tax in case of purchase, as provided by the statute, is simply discharging the duty imposed upon it by the organic law, to the end that the school fund shall always remain intact.

It is further contended that the statute violates the mandate of the constitution that the fund shall be "securely and profitably invested," for it is said, it places the credit of the state behind this feature of the legislative plan of loaning the fund. It is sufficient to say that the constitution, not the statute, effectuates this result. In fact the Constitution places the credit of the state behind every investment of the school fund. The statute in no wise affects the burden of the state in that regard, nor does it lessen the liability of the borrower in the premises. The constitutional section provides that the school fund shall be "invested as may be by law directed," and a further requirement is that such fund shall be "securely and profitably invested," but the determination of such questions is under legislative direction and, "in general, legislation respecting such matters must be left to the wisdom and discretion of the general assembly and of the chief executive of the state." *In re Loan of School Fund,* 18 Colo. 195, 199, 32 Pac. 273. We cannot say that the plan prescribed in the act before us does not meet the constitutional requirements in that regard.

Contrary to the contention of respondent, we are of the opinion that the act does not grant to farmers "any special or exclusive privilege, immunity or franchise," and is not in that respect violative of Section 25 of Article 5 of

the Constitution. Properly considered, this feature of the act pertains to one of the designated classes of securities set forth in the statute in which the school fund may be invested. Other classes of securities are also therein named. As the fund "must be securely and profitably invested as may be by law directed," it was proper for the law-making power to restrict the investment to bonds and warrants of the state, bonds of school districts, counties, cities and towns of the state and to "loans on unincumbered cultivated farm lands within the state." Such are the securities designated in which the fund may be invested and such classification constitutes a valid exercise of legislative power.

It is further contended by respondent that the statute is in conflict with Section 12 of Article 10 of the Constitution. This section, *inter alia,* declares that, "The general assembly may provide by law further regulations for the safe keeping and management of the public funds in the hands of the treasurer, but, notwithstanding any such regulation, the treasurer and his sureties shall in all cases be held responsible therefor." Respondent concedes that the law-making power has authority to make regulations for the safe keeping and management of public funds by virtue of this constitutional provision, and by Section 3 of Article 9, *supra,* shall make provision for the investment of the school fund, but contends that it has no power to provide for the investment of such fund by any one other than the state treasurer. The claim is that as the treasurer and his sureties are absolutely responsible for the security of the public funds, and the legislature can not devolve the duty upon another, it would be illegal and unjust to require him to pay out the funds upon an investment which he had nothing to do in making, and may not approve. In support of the contention he relies upon *In re House Resolution,* 12 Colo. 395, 21 Pac. 486. The case does not support the contention. On the contrary, it is held therein that the legislature may command the treasurer to disburse such funds as it shall see fit, subject only to constitutional restriction,

and that it may also direct the investment of the school fund and that the treasurer is only responsible for the safe keeping of the public money "till paid out or invested as authorized by statute." Unquestionably absolute liability rests upon the state treasurer in reference to all money actually in his custody, but it is equally certain that where the public money has passed out of his hands by lawful means or procedure, upon valid claims or legal loans, he has discharged his duty in the premises, and his liability in relation thereto ends.

The claim that the state treasurer alone may invest the fund has no support in the Constitution. That instrument does not even impliedly authorize him to do so. It makes him the custodian of, and responsible for, such fund, as of other public funds, and authorizes the legislature to provide by law further regulations for the safe keeping and management thereof. Had the intent been to invest the treasurer with the power of investing the fund, the language of the constitution would, doubtless, have been; "he shall securely and profitably invest the same," etc. No such words, or others of similar import, were used. On the contrary, the language employed clearly invests the law-making power with the duty of prescribing a plan, including the designation of agents to carry the same into effect, whereby the school fund may be securely and profitably invested. We are of the opinion that respondent's objections to the constitutionality of the law have no substantial basis, and the alternative writ heretofore issued should be made absolute. And it is so ordered.