QUESTIONS PRESENTED AND CONCLUSIONS
a. Whether the funds collected, disbursed and managed by the University of Colorado Treasurer are subject to the provisions of Colo. Const. art. X, § 12.
 No. The General Assembly has not provided that these funds are to be in the control of the State Treasurer.
b. Whether the funds collected, disbursed and managed by the University of Colorado Treasurer are subject to the provisions of §§ 24-36-103 and 24-22-107, C.R.S. (1988).
 No. Under current law, these funds are to be managed pursuant to §§ 23-20-109 and 111, C.R.S. (1988), and the regulations promulgated pursuant to § 23-20-112, C.R.S. (1988). Furthermore, the only additional restrictions on the University of Colorado Treasurer's authority are those contained in § 23-20-119, C.R.S. (1988).
c. If the State Treasurer were, by statutory amendment, made responsible for the custody, control, and investment of University of Colorado funds, may she delegate that authority to the Regents of the University or the University Treasurer, and if so, is the State Treasurer still liable for those investments.
 The General Assembly may provide by statute that University of Colorado funds be in the custody and control of the State Treasurer, and grant the State Treasurer authority to delegate such control back to the Regents of the University or the University Treasurer for purposes of investment. Furthermore, the State Treasurer would not remain liable for those funds invested by the University Treasurer pursuant to statutory authorization. However, the Regents or the University Treasurer would remain bound by those restrictions on investment authority applicable to the State Treasurer, unless additional investment authority is specifically authorized by statute.
 ANALYSIS
Colo. Const. art. X, § 12 states in relevant part as follows:
 (1) The general assembly may provide by law for the safekeeping and management of the public funds in the custody of the state treasurer, but, notwithstanding any such provision, the state treasurer and its sureties shall be responsible therefor.
The State Treasurer is the state's cash management officer responsible for the efficient management of all state cash. Section 24-22-107(6), C.R.S. (1993 Supp.). The treasury department's principal function is to receive all state moneys collected pursuant to § 24-36-103(1), C.R.S. (1988), which includes the following:
 It is the duty of every officer, department, institution, and agency of the state government charged with the responsibility of collecting the various taxes, licenses, fees, and permits imposed by law and of collecting or accepting tuition, rentals, receipts from the sale of property, and moneys of any other nature accruing to the state from any source whatsoever to transmit the same to the treasury department in such manner and under such procedures as may be prescribed by law or by fiscal rule of the controller.
Id. (Emphasis added). The inclusion of the terms "institution", "fees" and "tuition" within this subsection appears to indicate a legislative intent to include moneys collected by state institutions of higher education within its provisions.
However, the University of Colorado's organic act vests "control and direction of all funds of and appropriations to the university" with the CU Regents, with the exclusive exception of fiscal rules promulgated pursuant to § 24-30-202, C.R.S. (1988), which are not pertinent to this opinion. Section23-20-111, C.R.S. (1988). Furthermore, this act creates the post of Treasurer of the University of Colorado, who shall "keep a true and faithful account of all moneys received and paid out by him and shall pay all warrants in the order of presentation." Section23-20-109, C.R.S. (1988). Pursuant to the CU Regents' authority to "enact laws for the government of the university," §23-20-112, C.R.S. (1988), the Regents have provided that "[a]ll university funds are to be kept by the university treasurer except as expressly authorized by the Board of Regents." Law of the Regents, 1990, § 13.B.3.(C).
The CU Regents are authorized by statute to hold investments in one or more consolidated investment funds, § 23-20-118, C.R.S. (1988), and the CU Regents are also authorized to hold certificates of stock in the name of a nominee "[i]n order to facilitate the investment, reinvestment, sale, and disposition of corporate stocks. . . ." Section 23-20-119(1), C.R.S. (1988). Moneys obtained from the sale or management of university lands, and the interest arising from the investment of such funds, are placed under the "exclusive control of the regents of the said university," and "[t]he treasurer of the state of Colorado is instructed to turn over to the said regents all the moneys, warrants, bonds, and other securities of any nature that have come from the sale of said public lands belonging to the university." Section 23-20-121, C.R.S. (1988). Donations to the university "shall be conveyed to the regents of the university and invested as other funds of the university." Section23-20-120, C.R.S. (1988).
Thus, the relevant statutes also appear to grant the CU regents exclusive control and direction of their funds, including investment authority. Such authority is unique among state institutions of higher education in Colorado. As a matter of practice and history the University, through its Treasurer, has retained control of University investments and funds, and the State Treasurer has accommodated this practice.
Prior to 1975, § 24-36-103 also contained the following subsection dealing specifically with the University of Colorado:
 (3) Nothing in the section shall be construed to deprive the regents of the university of Colorado of the exclusive control and direction of all funds of and appropriations to the university, and the provisions hereof being intended only to provide for the safe custody and proper preservation thereof.
Section 24-36-103(3), C.R.S. (1972). The language of this section, repealed by the Legislature in 1975, was clearly intended to bring that section into conformance with the requirements of Colo. Const. art. IX, § 13, which prior to the 1972 constitutional amendments granted the CU Board of Regents the following authority:
 Control of University. The board of regents shall have the general supervision of the university, and the exclusive control and direction of all funds of, and appropriations to, the university.
Id. Prior to 1972, the CU Board of Regents was the only governing board of a state institution of higher education that derived its authority from the state constitution, placing CU on a different legal basis than other state colleges and universities. However, in November of 1972, Colorado voters approved a ballot proposal extending this constitutional status to the governing boards of other institutions of higher education and establishing the General Assembly's prerogative to modify that control by statute. See Legislative Council of theColorado General Assembly, an Analysis of 1972 BallotProposals, at 8. Art. IX, § 13 was repealed and the new constitutional language read as follows:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
Colo. Const. art. VIII, § 5(2). Although this change took place in 1972, the State Treasurer has not, until now, asserted that this change transferred authority over CU funds to his control.
In determining whether the State Treasurer currently possesses statutory authority to assume the investment function from the CU Treasurer, our first inquiry must be whether the General Assembly has, by statute, altered the right of "exclusive control and direction of all funds of and appropriations to" the University established by Colo. Const. art. VIII, § 5(2). InAssociated Students v. Regents, 189 Colo. 482, 543 P.2d 59
(1975), the Colorado Supreme Court first addressed the issue of whether the constitutional language "unless otherwise provided by law" subjected the University to laws of general applicability. That case involved the applicability of the Open Meetings Law to executive sessions of the University Board of Regents. The Open Meetings Law mandated that all meetings of any state policy-making or rule-making body must be open to the public. This statute conflicted with a regulation enacted by the Regents providing that executive sessions of the Regents should be closed to the public. The Court sided with the Regents, holding that the Regents' constitutional grant of authority, together with their statutory authority to "enact laws for the government of the university," § 23-20-112, C.R.S. (1973), constituted:
 special provisions, conferring upon the Regents specific and particular powers. As the trial court correctly concluded, the Sunshine Act is a general law. General legislation does not repeal conflicting special statutory or constitutional provisions unless the intent to do so is clear and unmistakable.
543 P.2d at 61. This holding was more recently reaffirmed inUberoi v. University of Colorado, 686 P.2d 785 (Colo. 1984). In Uberoi, the Colorado Supreme Court, in holding that the Colorado Open Records Act was inapplicable to the CU Regents, stated:
 [t]he university has adopted procedures dealing with the production and disclosure of records and other materials under its control. As in Associated Students, invalidation of these procedures by a legislative enactment such as the Open Records Act would limit the regents' powers to supervise the operation of the university. The Open Records Act contains no clear expression of legislative intent to impose such a limitation on the regents and we will not infer such intent where it is not unmistakably expressed.
686 P.2d at 788-89.
However, in the more recent case of Colorado Civil RightsComm'n v. Regents, 759 P.2d 726 (Colo. 1988), the Colorado Supreme Court appears to have modified the rule established byAssociated Students and Uberoi. InColorado Civil Rights Comm'n, the court held that the General Assembly, in enacting a comprehensive law creating the Colorado Civil Rights Commission and investing it with statewide jurisdiction to investigate and adjudicate claims of discriminatory employment practices, had thereby "otherwise provided by law" and had thus manifested an unequivocal intent to subject the Regents to the jurisdiction of the Commission in matters of employment discrimination. Id. at 730.
In so holding, the Court interpreted the constitutional grant of general supervisory authority to the Regents as neither exclusive nor absolute, and as not entailing a grant of exclusive jurisdictional domain. Rather, the Court found that the "otherwise provided by law" clause of art. VIII, § 5(2) clearly contemplated a limited power of "general supervision" only. Id. The Court noted that the General Assembly had repudiated the holdings of both Associated Students andUberoi by passing amendatory legislation, thus indicating that the judicial construction embodied in those cases did not correspond with the legislative intent. Id. at 734.
Finally, the issue of whether § 24-36-103, C.R.S. (1973) applied to state institutions of higher education was the subject of a 1976 Attorney General's Opinion requested by the State Controller. The State Board of Agriculture had asserted that Colo. Const. art. VIII, § 5(2) conferred upon them the power to unilaterally establish bank accounts for revenues pledged to pay bonds. In rejecting this contention, the Attorney General distinguished Associated Students by noting that the Board of Regents has adopted a rule providing for closed meetings of the CU Regents under certain circumstances. He found that the court in that case held that the Open Meetings Law would infringe upon the Regents' authority to govern the University, since application of the law would invalidate a law of the regents. However, no rule adopted by the Board of Agriculture would conflict with the requirements of § 103(1).
Additionally, the Attorney General found that even assuming the applicability of Associated Students to this issue, the references in § 24-36-103 to "every . . . institution . . . of state government" as well as to the collecting of "fees" and "tuition" make the statute sufficiently specific to fall within the constitutional exception "unless otherwise provided by law." The Attorney General also dealt with the effect of the repeal of subsection 103(3), which dealt specifically with the control and authority of the CU Regents. In this regard, the Attorney General found that subsection 103(3) had indicated that the provisions of 103 applied to the Regents, and appeared to state a legislative conclusion that there was no conflict between § 103 and the provisions of Colo. Const. art. IX, § 13, thus preserving the constitutionality of the statute. The Attorney General thus concluded that after the 1972 amendment to Colo. Const. art. VIII, § 5(2), subsection 103(3) was repealed as obsolete.
Although it is a close case, I conclude that the general language contained in § 24-36-103(1), C.R.S. (1988) does not grant the State Treasurer general control over the funds currently managed by the CU Regents. Colo. Const. art. VIII, § 5(2) contains two distinct grants of authority to state institutions of higher education, including the CU Regents: the power of "general supervision" over their respective institutions; and the "exclusive control and direction of all funds of and appropriations to" their respective institutions (emphasis added). Although the Colorado CivilRights Comm'n case modified the rule established inAssociated Students and Uberoi, these cases dealt with the power of "general supervision" only; indeed, in holding that the power of "general supervision" was a limited one, the Supreme Court specifically referenced the fact that the language used in the constitution was not "exclusive."Colorado Civil Rights Comm'n, 759 P.2d at 730, 735. By contrast, in the present case the "control and direction" granted the CU Regents over their funds is expressly made "exclusive" unless otherwise provided by law. Given the force of the language employed by our constitution in this case, I conclude that the CU Regents' "exclusive control and direction" over their funds should not be invalidated by a legislative enactment unless the legislative intent to do so be clearly and unmistakably expressed. See Uberoi v. University of Colorado,686 P.2d 785, 788-789 (Colo. 1984).
Although § 24-36-103(1), C.R.S. (1988) specifically references neither state institutions of higher education nor the CU Regents, it does reference "every . . . institution . . . of state government" as well as moneys derived from "fees" and "tuition." The 1976 Attorney General's Opinion referenced above found this language to be sufficiently specific to apply to state institutions of higher education, at least in the absence of a conflicting rule promulgated by the institution pursuant to specific statutory authority.
Such independent statutory authority clearly exists in the case of the CU Regents. Unlike other institutions, the CU Regents are statutorily vested with "control and direction of all funds of and appropriations to the university." Section 23-20-111, C.R.S. (1988). The Regents' are also empowered to enact laws for the government of the University, and have used this authority to prescribe that "[a]ll University funds shall be kept by the treasurer of the University of Colorado except as expressly authorized by the Board of Regents." Section 23-20-112, C.R.S. (1988); Laws of the Regents, 1990, § 13.B.3.(C). It is the CU Regents, and not the State Treasurer, who are specifically authorized to hold certain kinds of investments, §§ 23-20-118
and 119, C.R.S. (1988), and to control and invest moneys from donations and from University lands. Sections 23-20-120, 121, C.R.S. 1988).
These provisions, all of which predate the 1972 constitutional amendment, authorize and give effect to an independent CU Treasury which holds its own funds and makes independent investment decisions. Indeed, CU has held its own moneys in a separate treasury both before and after the 1972 amendment, and continues to do so at the present time. Since the General Assembly has never seen fit to alter or repeal these provisions, and since even the State Treasurer has acquiesced to this scheme for at least the last 24 years, I cannot now conclude that it has been void since that time.
Given this conclusion, the University is not, under current law, required to transmit its funds to the State Treasury. Nor is the University of Colorado Treasurer required, under current law, to abide by those investment restrictions applicable to the State Treasurer in Article 36 of Title 24. See §24-36-113, C.R.S. (1988).
However, the General Assembly may, by legislative enactment, "otherwise provide by law" for University funds by expressly transferring custody, control and investment authority for such funds to the State Treasurer. Furthermore, nothing in Colo. Const. art. X, § 12 prevents the General Assembly from expressly authorizing the State treasurer to delegate authority to invest all or a portion of these funds to the Treasurer of the University of Colorado. Under Colorado case law, the State Treasurer's constitutional responsibility for the safety of such funds ceases once such a statutory delegation for investment purposes is made:
 the treasurer is only responsible for the safekeeping of the public money `till paid out or invested as authorized by statute.' Unquestionably absolute liability rests upon the state treasurer in reference to all money actually in his custody, but it is equally certain that where the public money has passed out of his hands by lawful means or procedure . . . his liability in relation thereto ends.
People ex rel. Miller v. Higgins, 69 Colo. 79,168 P. 740, 742 (1917) (quoting In re House Resolution Relating toHouse Bill No. 349, 12 Colo. 395, 21 P. 486 (1889)). This result is also true if such moneys are designated a special fund, and not a part of the general revenues of the state. Stongv. Industrial Comm'n, 71 Colo. 133, 204 P. 892 (1922).
Finally, unless otherwise authorized by the General Assembly, any investments made by the Treasurer of the University under authority delegated by the State Treasurer would have to comport with those statutory investment restrictions applicable to the State Treasurer. The State Treasurer cannot authorize another to perform an act which would exceed his own constitutional and statutory authority.
SUMMARY
Those funds collected and managed by the University of Colorado Treasurer are not subject to the provisions of Colo. Const. art. X, § 12 or §§ 23-20-103 and 23-22-107, C.R.S. (1988). Rather, these funds are within the control and direction of the CU Regents, and are to be managed pursuant to §§23-20-109 and 111, C.R.S. (1988), and the rules adopted by the CU Regents pursuant to § 23-20-112, C.R.S. (1988).
 GALE A. NORTON Attorney General
 ANTONY B. DYL First Assistant Attorney General
EDUCATION, HIGHER PUBLIC FUNDS TREASURER, STATE
§ 24-36-103
§ 23-20-111
Colo. Const. art. VIII, § 5(2)
STATE AUDITOR
The CU Regents retain control and direction of university funds, which do not need to be transmitted to the State Treasurer.