QUESTION PRESENTED AND CONCLUSION
Issue: Does the GOCO Board, or does the Treasurer, have the authority to choose the specific investments of unused moneys within the GOCO Trust Fund?
Conclusion: It is the Treasurer who alone has the authority to choose the specific investments of unused moneys, but in exercising his authority, the Treasurer may not infringe upon the Board's authority to expend available moneys within the GOCO Trust Fund.
BACKGROUND
On November 3, 1992, the People of the State of Colorado approved an initiated amendment to the State Constitution, adding Article XXVII, to create the Great Outdoors Colorado Program. The initiative became effective upon proclamation of the Governor on January 14, 1993. 1993 Colo. Sess. Laws 2169, 2176.
Article XXVII came about as a result of certain citizens' dissatisfaction with the General Assembly's allocation of lottery proceeds to projects other than the Conservation Trust Fund, established for the acquisition of conservation sites and recreation facilities. Submission of Interrogatories on SenateBill 93-74, 852 P.2d 1, 4 (Colo. 1993); § 29-22-101, C.R.S. (1998). The People's intent in amending the Constitution was for the net proceeds of every state-supervised lottery game to be guaranteed and permanently dedicated to the preservation, protection, enhancement and management of the State's wildlife, park, river, trail and open space heritage. Colo. Const. art. XXVII, § 1. To effectuate the intent of the People, Article XXVII established the GOCO Trust Fund ("Trust Fund" or "Fund"). Colo. Const. art. XXVII § 2. The People placed certain responsibilities over the Trust Fund with the Treasurer and the State Board of the GOCO Trust Fund ("GOCO Board" or "Board").
In the years following the adoption of Article XXVII, the Treasurer and GOCO Board have disagreed over the Article's delegation of authority to choose the investment vehicles of unused portions of the Trust Fund. Though Article XXVII gives both the Treasurer and the Board certain responsibilities with regard to the Trust Fund, its language on the matter of choice of investment vehicles is somewhat unclear. To determine which of the two entities is responsible for choosing investment vehicles, we must first consider the pertinent provisions of the Article relating to the GOCO Board and the Treasurer. Additionally, because the Treasurer is a position existing outside of the framework of Article XXVII, we discuss his responsibilities, both generally and with respect to Article XXVII.
A. The State Board of the GOCO Trust Fund
The powers and responsibilities of the State Board of the GOCO Trust Fund are set forth in Sections 5 and 6 of Article XXVII. The Board "shall have the duty to assure that expenditures are made for the purposes set forth" in Sections 5 and 6. Colo. Const. art. XXVII, § 5(1)(a). The GOCO Board has the discretion "(a) to direct that any portion of available revenues be reinvested in the Trust Fund and not expended in any particular year," and "(b) to make other expenditures which it considers necessary and proper to the accomplishment of the purposes of" Article XXVII. Id. at § 5(1)(b). The GOCO Board's remaining responsibilities are listed in Section 6, providing the GOCO Board with the authority to undertake "the following actions":
(a) To direct the Treasurer to disburse expendable income from the Trust Fund as the Board may determine by resolution, and otherwise to administer the Trust Fund, provided, however, that the Board shall not have the power to acquire any interest in real property other than (I) temporarily to hold real property donated to it and (II) to acquire leased office space;
(b) To promulgate rules and regulations as are necessary or expedient for the conduct of its affairs and its meetings and of meetings of any committees and generally for the administration of this article, provided, however, that such rules and regulations shall give the public an opportunity to comment on the general policies of the Board and upon specific grant proposals before the Board;
(c) To cause to be published and distributed an annual report, including a financial report, to the citizens, the Governor and the General Assembly of Colorado, which will set out the Board's progress in administering the funds appropriated to it, and the Board's objectives and its budget for the forthcoming year, and to consult with the General Assembly from time to time concerning its objectives and its budget;
(d) To administer the distribution of grants pursuant to Sections 1(1)(c), 1(1)(d), 5(1)(a)(III), and 5(1)(a)(IV) of this article, with the expense of administering said grants to be defrayed from the funds made available to the program elements of said sections;
(e) Commencing July 1, 1993, to determine what portions, if any, of moneys allocated to the Trust Fund should be invested in an interest-bearing Trust Fund account by the Treasurer of the State of Colorado, to remain in the Trust Fund and available for expenditure in future years;
(f) To employ such staff and to contract for such office space and acquire such equipment and supplies and enter into such other contracts as it may consider necessary from time to time to accomplish its purposes, and to pay the cost thereof from the funds appropriated to the Board under this article, provided, however, that to the extent it is reasonably feasible to do so the Board shall (I) contract with the Colorado Department of Natural Resources or other state agency for necessary administrative support and (II) endeavor to keep the level of administrative expense as low as may be practicable in comparison with its expenditures for the purposes set forth in Section 1 of this article, and the Board may contract with the State Personnel Board or any successor thereof for personnel services.
Id. at § 6(2).
The GOCO Board is a political subdivision of the State with all of the duties, privileges, immunities, rights, liabilities and disabilities of a political subdivision. Id. at § 6(3). It is not an agency of State government nor is it subject to any administrative direction by any department or agency of the State, except to the extent provided in the Constitution. Id. at § 6(3). The Board is not a private entity, but is essentially governmental in nature. Submission of Interrogatories on Senate Bill 93-74,852 P.2d at 10.
B. The Treasurer
The Treasurer is a constitutional officer pursuant to Article IV, Section 1, of the State Constitution. The Treasurer's duties and responsibilities are set forth both within various statutes and the Constitution, including Article XXVII. The Treasurer's primary responsibility is the State Treasury for which the Treasurer the chief executive officer. § 24-36-101, C.R.S. (1998). With regard to the Treasurer's general authority to invest and otherwise manage funds within his custody, the Constitution provides that "the general assembly may provide by law for the safekeeping and management of the public funds in the custody of the treasurer. But notwithstanding any such provision, the state treasurer and his sureties shall be responsible therefor." Colo. Const. art. X, § 12(1). In sum, the General Assembly may place the authority to choose specific investments with either the Treasurer or with any other entity. Responsibility for such funds remains with the Treasurer as long as the funds are in his possession, even if he does not have the authority to choose the investment vehicles for the funds.
Article X does not define the phrase "public funds," though Part 6, of Article 75, Title 24, defines public funds very broadly as: "any funds in the custody, possession, or control of a public entity; any funds over which a public entity has investment control; any funds over which a public entity would have investment control but for the entity's delegation of that control to another person; and any funds over which another person exercises investment control on behalf of, or for the benefit of a public entity." § 24-75-601(2), C.R.S. (1998) (emphasis added). The phrase "public entity" includes the Treasurer, any agency of state government, or any political subdivision of the State, such as the GOCO Board. See § 24-75-601(1), C.R.S. (1998).
One looks to the law surrounding a given fund to determine what type of fund it is and who has authority to direct the fund's investment. For all state funds, the Treasurer is the official custodian, § 24-36-101, C.R.S. (1998), and his department is to receive all such funds. § 24-36-102, C.R.S. (1998). Moreover, the Treasurer may deposit or invest state funds as he sees fit subject to the limitations set forth by the General Assembly. § 24-36-113, C.R.S. (1998). "State funds," though not defined anywhere in the Colorado Revised Statutes, would appear to include "taxes, licenses, fees, and permits," as well as "tuition, rentals, [and] receipts from the sale of property". § 24-36-103(1). In other words, state funds would be moneys that the State owns, over which the General Assembly has control through the appropriation process, and which are a subset of public funds, noncustodial in nature.
Should the public funds in question not be "state funds," their investment is covered under § 24-75-601.1. Included in the coverage of this statute are any custodial funds over which the Treasurer or any other governmental entity has investment control. Whatever the nature of the funds, when the governmental entity invests these moneys, it must do so pursuant to the "prudent man" standard. § 15-1-304, C.R.S. (1998).
Turning to the Treasurer's duties under Article XXVII, Section 2 of the Article establishes the trust in the Treasury of the State of Colorado. Additionally, Section 3(1)(a)(III) requires the Treasurer to deposit certain proceeds through November 30, 1998, "in trust for the Board of the Trust Fund." The Treasurer is responsible for depositing certain proceeds for each quarter beginning with the first quarter of the State's fiscal year 1998-1999 "in trust to the Board of the Trust Fund." Colo. Const. art. XXVII, § 3(1)(b)(III). Moreover, under specified conditions, the Treasurer must allocate certain excess net proceeds to the State General Fund of the State of Colorado. Id. From July 1, 1993, the Treasurer shall "hold in trust to the Board of the Trust Fund" certain properties, as well as the interest derived from moneys held in the Trust Fund, and any other moneys that the General Assembly has allocated to the Trust Fund. Id. at § 3(2). Upon instruction from the GOCO Board, the Treasurer shall disburse expendable income from the Trust Fund. Id. at § 6(2)(a). Finally, upon the GOCO Board's determination of what portions, if any, should be invested, the Treasurer shall invest those portions in an interest-bearing Trust Fund Account. Id. at § 6(2)(e).
ANALYSIS
The People established the GOCO Program and Trust Fund through a citizen-initiated constitutional amendment. Accordingly, the provisions of the amendment take precedence over any statutes or earlier provisions of the Colorado Constitution that are in conflict with Article XXVII of the Constitution.
A. Legal standards for Construction of Citizen InitiatedConstitutional Provisions and Trusts
When considering citizen-initiated measures, courts may rely upon the general rules of statutory construction. Bickel v. City ofBoulder, 885 P.2d 215, 228 n. 10 (Colo. 1994), cert. denied,115 S.Ct. 1112 (1995). If a statute is susceptible of more than one interpretation, the court must consider the purposes for which the law was enacted and the consequences that would flow from the different constructions, and then adopt the construction that results in harmony, rather than inconsistency. Havens v. Board ofCounty Comm'rs, 924 P.2d 517, 523 (Colo. 1996); In re: GreatOutdoors Colorado Trust Fund, 913 P.2d 533, 538 (Colo. 1996) (stating "where ambiguities exist, a court should favor a construction that harmonizes different constitutional provisions rather than creates conflict").
B. Construction of Article XXVII and the GOCO Trust Fund
Article XXVII's grant of authority to make investment decisions beyond determining what portions are to be spent and how much is to be invested is unclear.[1] We look first, then, to case law construing analogous laws to see what guidance it may provide in determining the respective roles of the Treasurer and the GOCO Board under Article XXVII. Second, we consider the language of Article XXVII.
1. Cases on the authority to choose investment vehicles.
There are two Colorado cases that address whether the Treasurer, or a board or commission established to oversee certain funds, has the authority to determine how to invest those funds. People exrel. Miller v. Higgins, 168 P. 740 (Colo. 1917) (concerning 1917 Colo. Sess. Laws 446-453, ch. 122, and Public School Fund); Stongv. Industrial Commission, 204 P. 892 (Colo. 1922) (concerning 1919 Colo. Sess. Laws, ch. 210, § 122, pp. 700-760, and State Compensation Insurance Fund). In both cases, the State Supreme Court held that the overseeing bodies had the authority to choose specific investments for the unused portions of certain public funds.
a) People ex rel. Miller v. Higgins.
In People ex rel. Miller v. Higgins, 168 P. 740 (Colo. 1917), Section 1 of the law at issue stated that "all school funds of the state, whether permanent or income, unless otherwise disposed of by law, shall be invested as directed by the State Board of LandCommissioners," in a series of specified investment vehicles. 1917 Colo. Sess. Laws, at 446 (emphasis added). Included in the list of investment vehicles was the authority to make loans on farm lands.Id.
The position of the Treasurer in that case was that the law could not place the responsibility for choosing specific investments — such as the loan for farm land — in the hands of an entity other than the Treasurer, or the act would violate Article X, § 12 of the State Constitution. The Court held that because the plain language of Article X, § 12 does allow the General Assembly (or, for that matter, the People) to place this responsibility in the hands of an entity other than the Treasurer, it was constitutional for the act establishing the Public School Fund to give this responsibility to the State Board of Land Commissioners. 168 P. at 742. However, the opinion shows that this statutory language clearly gave the board at issue in that case the authority to choose which investments to make with unused Public School Fund moneys.[2]
b) Stong v. Industrial Commission.
The subject of Stong v. Industrial Commission, 204 P. 892 (Colo. 1922), the act which established the State Compensation Insurance Fund,[3] vested within the Industrial Commission of Colorado "full power, authority and jurisdiction over the State Compensation Insurance Fund," for the Commission to "do and perform any and all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise in any power, authority or jurisdiction over said fund in the administration thereof under the provisions of this act, as fully and completely as the governing body of a private insurance company might or could do, subject, however, to all provisions of this act." 1919 Colo. Sess. Laws ch. 210, § 123. Moreover, the act made the Treasurer "the custodian" of the fund. Id. at § 140.
The Treasurer appealed a lower court's writ of mandamus, ordering him to invest certain moneys from the State Compensation Insurance Fund in United States Bonds, as the Industrial Commission had directed. In pertinent part, the Court held that the language of the act was plain and unambiguous; any and all acts which the Treasurer was to take with regard to the State Compensation Insurance Fund were purely ministerial, as they were at the direction of the Commission. Stong, 204 P. at 893; see also
1919 Colo. Sess. Laws ch. 210, at §§ 141-142.
c) Analysis of the two cases.
In Higgins and Stong, the Treasurer was merely a custodian of the public funds at issue with ministerial duties only. AlthoughHiggins only addressed the constitutionality — under Article X, § 12 — of the transferal of investment authority over school funds to the board, nevertheless, the law in Higgins provided that the State Board of Land Commissioners was to direct the investment of the school funds. This language gave the board express and specific authority for investment responsibility, and gave the Treasurer mere custodial responsibility. This view is supported by the fact that the law in Higgins lacked any express language providing the Treasurer with investment responsibility.
In contrast to the express and specific authority in Higgins, the act in Stong, provided the Commission with express and very broad authority. It stated that the Commission was "vested with full power, authority and jurisdiction" over the fund and that the Commission could "do and perform any and all things" with regard to the exercise of its power. Moreover, the Treasurer was left only with express custodial responsibility over the funds while in his possession.
Rather than establishing conclusively that an entity other than the Treasurer has authority to direct the types of investment vehicles for a custodial fund, Higgins and Stong stand for the proposition that one must consider the statutory or constitutional language establishing the custodial fund to determine who has the authority for directing investments. We turn then to the language of Article XXVII to see if it provides us with guidance on which of the two entities has the authority to direct investments.
d) A comparison of GOCO Board and Treasurer responsibilities.
After careful study of Article XXVII, we conclude that the clearest intent is expressed in Section 6(2)(e). This key provision authorizes the Board "to determine what portions, if any, of money allocated to the Trust Fund should be invested in an interest-bearing Trust Fund account by the Treasurer of the Stateof Colorado. . . ." (emphasis added). This sentence sets out the allocation of responsibilities between the Board and the Treasurer. While the Board may determine what amount to invest, it is the Treasurer who performs the actual investment functions. Accordingly, it is the Treasurer who would select appropriate investments.
Other portions of Article XXVII reflect the same division of responsibility. Section 5(1)(b) provides that the Board may "direct that any portion of available revenues be reinvested in the Trust Fund and not expended in a particular year." We read this language to mean only that the Board may determine whether or not to spend available revenues and if the Board decides not to spend the revenues, then the Board may direct the Treasurer to reinvest the available revenues. The Board again determines the amount to be invested, not the investment vehicles.
Section 6(2)(a) allows the Board to "direct the Treasurer to disburse expendable income from the Trust Fund as the Board may determine by resolution, and otherwise to administer the Trust Fund . . ." (emphasis added). This broad language arguably might be interpreted to include investment authority. However, when read in context, this provision appears to address the use and expenditure of available portions of the Trust Fund for the purposes set forth in Article XXVII and for the needs of the Board. This interpretation is bolstered by the remainder of Section 6(2)(a), which specifies expenditures that are permissible. It prohibits the Board from acquiring an interest in property, other than the temporary holding of land given to it or the leasing of office space.
Reading the above language together, one finds that Article XXVII gives the GOCO Board a narrow range of specified powers (i.e., "the following actions"), the majority of which relate to the GOCO Board's discretion on whether to expend funds, and the GOCO Board's limits on how to expend funds from the Trust Fund. There is certainly nothing that expressly gives the Board investment power. Given the specific, enumerated authority under Sections 5 and 6 of the Article, the GOCO Board lacks the authority to choose the specific investment vehicles for the unused portions of the Trust Fund under the doctrine of statutory construction, inclusiounius exclusio alterius (the inclusion of certain terms or conditions provides for the exclusion of all other terms or conditions). See Lunsford v. Western States Life Ins.,908 P.2d 79, 84 (Colo. 1995) (stating, "when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others").
Because Article XXVII mandates investment of unused moneys and because the Board lacks that authority, the Treasurer must, therefore, be responsible for the determination of investment vehicles. There is additional language with in Article XXVII supporting the Treasurer's authority to direct investments. The Article establishes the Trust Fund within the Treasury of Colorado, Colo. Const. art. XXVII, § 2. Section 3 instructs the Treasurer to hold certain moneys and property "in trust for" and "in trust to" the GOCO Board. Taken together with Section 6(2)(e), it is now clear that the Treasurer is responsible for the selection of specific investments of unused moneys within the GOCO Trust Fund. Accordingly, in considering the whole of Article XXVII, the Treasurer alone is responsible for choosing the specific investment vehicles for unused moneys within the Trust Fund.
This reading of Article XXVII is harmonious with the Treasurer's role generally to safeguard and invest public funds and state moneys. The Treasurer traditionally has such responsibility over public funds, absent legislative action placing that responsibility in another entity's hands. Colo. Const. art. X, §12(1). Indeed, given the GOCO Board's broad discretion over whether to spend money, it is appropriate to have the Treasurer safeguard and invest the unused portions of the Trust Funds and provide balance to the GOCO Board.
The Treasurer's powers to invest unused portions of the Trust Fund are not unlimited. Certainly, the Treasurer may not interfere with the Board's authority to expend available funds through his choice of investment vehicles, or he would violate Colo. Const. art. XXVII, § 6(3), by effectively subjecting the Board to his administrative direction. In particular, the Treasurer may not choose investment vehicles that would make otherwise available funds unavailable or available only at a cost to the Trust Fund.
SUMMARY
Article XXVII provides for separate entities to direct the expenditure and the investment of moneys within the GOCO Trust. The GOCO Board determines whether and how much to spend of available funds and on what projects the funds should be spent. The Treasurer determines the investment vehicles in which to invest unused portions of the Trust Fund. The responsibilities of the two entities are exclusive, albeit complimentary, and the Treasurer may not exercise his responsibilities in such a way as to infringe upon the Board's responsibilities.
GALE A. NORTON Attorney General
HUGO TEUFEL Deputy Solicitor General
[1] The Board has the right to make these determinations, as discussed above.
[2] The purpose of the law may well have been, in part, to establish a loan program for the benefit of farmers, rather than to simply invest money. The state explicitly spelled out that the land board would receive and process loan applications. Once approved, the treasurer's clear statutory role was simply to transmit money to the recipient. This is quite different from the ordinary process of investment by the Treasurer, and thus, this case provides little assistance in statutory construction.
[3] The act in Stong was passed by the General Assembly. 1919 Colo. Sess. Laws ch. 210, at 730, 760.