This request requires interpretation of § 24-36-113, C.R.S. (1999). This statute describes the duties of the Treasurer to manage the funds of the citizens of Colorado.
 QUESTIONS PRESENTED AND CONCLUSIONS
Question: If the Treasurer purchases a corporate debt obligation that a national rating agency rates as investment grade at the time of purchase, must he sell that investment immediately if the security subsequently is downgraded below investment grade?
Answer: No. As a custodian of the public funds of Colorado, the Treasurer is charged to manage public funds in accord with the direction of the Legislature. Under Colorado law, the Treasurer must manage state investments to maximize returns and to avoid losses of principal, consistent with goals of safety and liquidity. The statutes afford the Treasurer considerable discretion in fund management. The credit rating of a bond commonly may vary over the life of the obligation, depending upon circumstances unknown at the time of the purchase. In his exercise of discretion, the Treasurer is not required to sell an investment security solely because the security has been downgraded.
 DISCUSSION
Under the Constitution of Colorado, the Treasurer of Colorado is a custodian of public funds. Colo. Const., art. X, § 12(1). Colorado's Constitution declares that the Treasurer is to follow the direction of the General Assembly concerning the safekeeping and management of the State's funds. Id.
 The Investment Responsibilities of The Treasurer of Colorado
More than one hundred years ago, early in the history of Colorado, the Colorado Supreme Court interpreted the State's Constitution to authorize the Treasurer to make only those investments approved by the Legislature by statute. In re House Resolution, 12 Colo. 395,21 P. 486 (1889) (holding unconstitutional a legislative bill that directed the Treasurer to deposit public funds in banks selected by the Governor). Nevertheless, the Treasurer retains constitutional authority, as custodian of public funds, to choose among permissible investments. Id. Also, through legislation the General Assembly may designate a custodian other than the Treasurer to exercise investment authority for particular funds.People ex rel. Miller v. Higgins, 69 Colo. 79, 168 P. 740 (1917) (State Board of Land Commissioners designated as the investment authority for Colorado's public school fund).
The question presented in this opinion requires interpretation of current statutory provisions that describe the classes of investments permissible for public funds. This inquiry begins with the goals of the General Assembly concerning such investments by the Treasurer. They are set forth in § 24-36-113(1), C.R.S. (1999):
 In making such investments, the state treasurer shall use prudence and care to preserve the principal and to secure the maximum rate of interest consistent with safety and liquidity. . . .
The General Assembly gives the Treasurer specific instructions concerning investment of state funds in corporate debt obligations. Section 24-36-113(3.5), C.R.S. (1999) declares:
 [t]he state treasurer may, in the state treasurer's discretion, invest such moneys in corporate debt obligations rated at least investment grade by a nationally recognized rating organization.
It is a general principle of statutory construction that all provisions of a statute must be construed so that "the true intent and meaning of the general assembly may be fully carried out." §2-4-212, C.R.S. (1999). To do so, these statutory provisions must be read together as a whole to give a harmonious effect to each part. United Airlines, Inc. v. Industrial Claim Appeals Office,993 P.2d 1152 (Colo. 2000); State v. Nieto, 993 P.2d 493 (Colo. 2000).
When read together, these statutes award considerable investment discretion to the Treasurer. "Prudence" and "care" are the directives contained in § 113(1), and these broad requirements evince substantial discretion to accomplish the specific instructions contained in § 113(3.5). Understandably, the General Assembly has chosen not to provide simply a laundry list of permissible investments to be checked off by the Treasurer in some clerical fashion. Finally, these statutes are silent as to the specific time when a permissible investment is to be sold. For these reasons, I conclude that a sale determination for an investment in a corporate debt obligation is left to the informed discretion of the Treasurer, to be bounded by the statutory principles of "prudence and care" to preserve principal and to secure maximum return consistent with safety and liquidity.
 The Buy-And-Hold Investment Policy of the Treasurer
The current investment policy of the Treasurer is to buy fixed income investments and to hold them to maturity when possible. A large majority of state funds are invested in securities with maturity dates ranging between one and five years. Some securities held by the state mature over ten to twenty years.
The credit rating of a corporate debt obligation may change several times over the life of the obligation. This is a normal occurrence as circumstances surrounding the obligation change. Also, notwithstanding the downgrading of the credit rating of a bond, the issuing company often continues to make interest payments, and the principal of the bond is often repaid when the bond matures. The risk of loss of interest or principal in the investment depends entirely upon the specific facts involved, and can be determined based upon an evaluation of those facts.
In addition, it is almost always true that the downgrading of a bond reduces its price on the market. Thus, to adopt a rule that requires the state to sell its bonds when they are downgraded means that the state will almost always suffer a loss when it complies with the rule.
The Treasurer has adopted as policy the rule that he will sell immediately any corporate debt obligation that falls below an investment grade rating. It is this policy that is addressed directly by this opinion. The Treasurer's letter to the Attorney General of May 23, 2000 also states that the current policy of the Treasurer is to avoid purchasing corporate debt obligations rated in the lowest investment grade. The Treasurer reasons that a bond rated just above investment grade might easily be downgraded a step, and then the Treasurer would be obligated to sell the bond immediately.
Again, such a sale likely would result in a loss of principal. In appropriate circumstances, however, if the bond were retained in the state's portfolio scheduled interest payments would continue. Also in appropriate circumstances, when the failure of the issuer is unlikely the principal would be repaid at maturity. For the reasons described below, I conclude that the Treasurer's literal reading of a single portion of the statutory language governing the Treasurer's work is at odds with the broader legislative purposes that underlie the Treasurer's investment powers. The Treasurer has greater discretion to retain corporate debt obligations than his current policy suggests.
 Bond Credit Ratings
Corporate debt obligations are often referred to as bonds. Corporate bonds are rated according to their credit quality, and those ratings significantly affect the marketability and value of the bonds involved. The information set forth below describing bond credit ratings is borrowed in large part from the Internet website of the Bond Market Association (www.bondmarkets.com).
In the United States, four national rating agencies assign credit ratings to most corporate bonds. These rating agencies monitor developments during the bond's lifetime, and update their ratings as necessary. The best known rating companies are Moody's Investors Service and Standard Poor's Corporation.
Each rating agency assigns bonds a quality rating that is measured on a scale ranging from the highest quality (Moody's "Aaa" or Standard Poor's "AAA" ratings) to a rating that indicates danger of imminent or actual default (Moody's "C" or Standard Poor's "D" ratings). The top four credit ratings are considered "investment grade." (Moody's "Baa" and higher or Standard Poor's "BBB" and higher are examples.) Bonds with credit ratings below those levels are not investment grade, and are considered "high yield" bonds. Moody's and Standard Poor's list five categories below investment grade, only one of which constitutes actual default.
Because bonds often promise the payment of interest over many years, changes occur in the issuer's financial condition and management, economic and debt characteristics surrounding the obligation, and specific revenue sources securing the bond. Rating agencies monitor credit factors which affect a particular bond, and usually will signal if they are considering a rating change. If a bond trades in a secondary market after its initial purchase, its price will fluctuate above or below face value in response to these variables.
According to Standard Poor's, a credit rating is a current opinion of the creditworthiness of an obligor with respect to a specific financial obligation, a specific class of financial obligations, or a specific financial program. Rating definitions are expressed in terms that reflect risk of default. A specific bond may be rated as below investment grade, but still be rated several grades above a bond that is in danger of imminent default.See, generally, Standard Poor's Ratings Services: Issue CreditRatings (found at www.standardandpoors.com.).
When the General Assembly authorized the Treasurer to invest state funds in investment grade corporate bonds, it certainly was aware that credit ratings change after the initial purchase of the bond. No language in the pertinent statutes suggests that the General Assembly intended for the Treasurer to actively trade a corporate bond any time its credit rating drops below investment grade. To the contrary, the Legislature expressly declares its intent that the principal of the state be preserved, even while the maximum return on that principal is sought.
For these reasons, I conclude that the legislature intended for the Treasurer to exercise his informed discretion and expertise to determine whether a downgrade in the credit quality of a bond is so substantial that immediate sale of the security is required, or whether the circumstances dictate that the state should continue to hold the security in order to preserve principal. Once a bond is in the State's portfolio, the General Assembly does not require the Treasurer to sell the bond — and suffer an actual loss of principal — if default on interest or principal is unlikely, regardless of the current rating of the bond.
 Previous Statutory Language
The statutes described above have been amended several times over the past twelve years. These amendments demonstrate legislative intent to broaden the discretion of the Treasurer to invest in corporate bonds. This pattern of statutory amendment supports the conclusion stated in this opinion.
Prior to 1988 the Treasurer lacked statutory authority to invest in corporate bonds, except for short term commercial paper. In 1988 subsection (3.5) was added, in a form that permitted investment in "medium-term corporate notes with a rating of at least `AA'." Allowable bond investments had to be issued by United States corporations with a net worth in excess of two hundred fifty million dollars, and were required to mature within three years of purchase. 1988 Colo. Sess. Laws, ch. 180. In 1992 subsection (3.5) was amended to broaden the state treasurer's investment discretion to include corporate bonds rated "A" or better. 1992 Colo. Sess. Laws, ch. 171. The current, broader language of subsection (3.5) was adopted in 1997 in SB 97-150. This change expanded further the Treasurer's discretion to purchase any investment grade corporate bond (i.e. those rated BBB or better). It also removed the requirements on the net worth of the issuer and limitations on the maturity of bonds. 1997 Colo. Sess. Laws, ch. 110.
These statutory changes demonstrate the General Assembly's intent to expand the discretion of the Treasurer. He may invest in corporate bonds with lower credit ratings and longer maturity dates. He may choose to purchase only the highest rated bonds, and sacrifice some yield.
These changes support the conclusion that the Treasurer has discretion, after the initial purchase of an investment grade bond, to decide when to sell the security. The Legislature has recognized in statute that the Treasurer is properly situated to determine whether the statutory investment goals for state funds are best served by immediate sale of a bond that has been downgraded for credit quality, or whether that bond should continue to be held in the state's portfolio.
 CONCLUSION
The Colorado General Assembly requires that initial investments of state funds in corporate debt obligations be made only in bonds that are rated in one of the four highest categories used by national rating agencies. The General Assembly has made no similar directive concerning when bonds must be sold. The latter decision is to be carried out in the informed discretion of Colorado's Treasurer, and in accord with statutory goals to maximize return and conserve principal.
In the event that a bond originally of investment grade later is downgraded below that grade, the Treasurer is not required to sell that bond immediately. The Treasurer is charged with constitutional and statutory responsibilities to exercise prudence and care to determine how to preserve the principal of the state's investments consist with securing the maximum return on the investment. Nothing in the legislation authorizing these particular investments restricts the discretion of the Treasurer to sell or retain bonds, of any rating, as necessary to achieve these overall goals.
Issued this 26th day of July, 2000.
KEN SALAZAR Attorney General
RENNY FAGAN Deputy Attorney General
RICHARD FORMAN First Assistant Attorney General
Business and Licensing Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203